# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 08-2769

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Francisco Loredo-Olvera, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

———————————

Submitted: March 9, 2009
Filed: May 15, 2009

———————————

Before GRUENDER, ARNOLD and BENTON, Circuit Judges.

———————————

PER CURIAM.

In April 2008, Francisco Loredo-Olvera pled guilty to illegal reentry after being deported in violation of 8 U.S.C. § 1326(a). Because he was previously convicted of an aggravated felony—assault causing serious bodily injury to a child—and was previously deported after that conviction, Loredo-Olvera faced a maximum term of imprisonment of twenty years. *See* 8 U.S.C. § 1326(b)(2) (providing that an alien who violates § 1326(a) and was previously deported after being convicted of an aggravated felony is subject to a maximum term of imprisonment of twenty years).

The district court[1] found that Loredo-Olvera's base offense level under § 2L1.2(a) of the advisory sentencing guidelines was 8 and that Loredo-Olvera was eligible for a 16-level enhancement under § 2L1.2(b)(1)(A)(ii) because he was previously deported after being convicted of a felony crime of violence. After applying a 3-level reduction for acceptance of responsibility under § 3E1.1, the district court correctly determined that Loredo-Olvera's total offense level was 21. Since Loredo-Olvera's criminal history placed him in category V, his advisory sentencing guidelines range was 70 to 87 months.

At sentencing, Loredo-Olvera's girlfriend, Tammy Martinez, testified that she and Loredo-Olvera fled their home in Juarez, Mexico, because they feared retribution from Loredo-Olvera's former gang after he refused to perform a criminal "mission." According to Martinez, she and Loredo-Olvera entered the United States at El Paso, Texas, but eventually traveled to Arkansas to attend her father's funeral. Instead of returning to El Paso, Martinez and Loredo-Olvera decided to stay in Arkansas, where Loredo-Olvera was arrested in February 2008, because they thought they would be safer there. Loredo-Olvera reiterated Martinez's account of the events surrounding his illegal reentry, expressed remorse for breaking the law, and asked the district court to "please help [him]" because he had "no other place to go."

Loredo-Olvera's counsel asked the district court to consider imposing a sentence of 60 months' imprisonment because, as a former gang member with identifying tattoos, Loredo-Olvera would have "difficulty dealing with prison life." Although counsel did not specify whether he was requesting a downward departure or a downward variance, the court noted that the distinction made no difference in this case because Loredo-Olvera's argument for a sentence below the advisory guidelines range was unpersuasive. In particular, the court stated that it did not think Loredo-

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

Olvera's past membership in a criminal organization warranted leniency. On the contrary, the court indicated that Loredo-Olvera's extensive criminal history "might warrant a sentence at the higher end of the guideline range, or even above it." After considering the sentencing factors set out in 18 U.S.C. § 3553(a), the court sentenced Loredo-Olvera to 70 months' imprisonment, the bottom of the applicable guidelines range.

On appeal, Loredo-Olvera challenges only the substantive reasonableness of his sentence, which we review for abuse of discretion. *See United States v. Phelps*, 536 F.3d 862, 869 (8th Cir. 2008) (citing *Gall v. United States*, 552 U.S. ---, 128 S. Ct. 586, 597 (2007)), *cert. denied*, 555 U.S. ---, 129 S. Ct. 1390 (2009). Under this deferential standard, we accord a sentence within the applicable guidelines range a "presumption of substantive reasonableness on appeal." *Id.* (quoting *United States v. Robinson*, 516 F.3d 716, 717 (8th Cir. 2008)).

Loredo-Olvera argues that his sentence is unreasonable for three principal reasons. First, Loredo-Olvera contends that the district court gave insufficient weight to one of the sentencing factors set out in § 3553(a)—namely, "the nature and circumstances of the offense and the history and characteristics of the defendant." *See* § 3553(a)(1). According to Loredo-Olvera, the court was "dismissive" of the evidence that Loredo-Olvera presented about the threat he faced from members of his former gang in Mexico. We disagree. The record shows that the court listened to the evidence that Loredo-Olvera presented, as well as Loredo-Olvera's pleas for "help" and his counsel's suggestion that a sentence of 60 months' imprisonment would be appropriate. While the court noted that it was uncertain "why [it was] hearing all of this" since it lacked authority either to order Loredo-Olvera deported or to grant Loredo-Olvera "sanctuary" in the United States, the court went on to explain in detail why it was not persuaded to grant a departure or variance by the testimony about Loredo-Olvera's flight from his home in Juarez or the assertion that prison life would be particularly difficult for him. Needless to say, the fact that the court had

discretionary authority to grant a departure or variance does not mean that it was required to do so based on a request for leniency that it found unpersuasive. *See, e.g.*, *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008) ("*United States v. Booker* . . . gave district judges extra discretion without holding that they must be lenient."). In the end, the court apparently gave some weight to mitigating considerations, for it imposed a sentence at the bottom of the applicable guidelines range after indicating that Loredo-Olvera's extensive criminal history might otherwise warrant a substantially higher sentence. Thus, we conclude that the district court did not commit a clear error of judgment in weighing the nature and circumstances of the offense and the history and characteristics of the defendant against the other sentencing factors set out in § 3553(a).

Next, Loredo-Olvera contends that the district court gave excessive weight to a different sentencing factor—namely, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* § 3553(a)(6). According to Loredo-Olvera, the court's statement that "it would be bothersome" to impose disparate terms of imprisonment on two defendants with the same guidelines range suggests that the court did not make an individualized assessment of the circumstances present in this case. Again, we disagree. The record shows that the court properly considered the need to avoid unwarranted sentence disparities among similarly situated defendants while expressly recognizing that it had the authority to sentence Loredo-Olvera to a term of imprisonment below the advisory guidelines range. As we have held, *Booker* did not forbid sentencing courts from considering the need to avoid unwarranted sentence disparities, which is, after all, one of the factors enumerated in § 3553(a). *United States v. Ruelas-Mendez*, 556 F.3d 655, 658 (8th Cir. 2009). Thus, we conclude that the district court did not abuse its "considerable discretion" by giving more weight to this and other factors that supported a sentence within the applicable guidelines range than to factors that might have favored a more lenient sentence. *See id.*

-4-

Finally, Loredo-Olvera contends that the Sentencing Commission did not "exercise its characteristic institutional role in crafting [§ 2L1.2]," which is purportedly based on "statutory directives" rather than an "empirical approach." Assuming, however, that the district court was *permitted* to disregard § 2L1.2 on policy grounds, we have made clear that *Kimbrough v. United States*, 552 U.S. ---, 128 S. Ct. 558 (2007), and *Spears v. United States*, 555 U.S. ---, 129 S. Ct. 840 (2009) (per curiam), "do not hold that a district court *must* disagree with any sentencing guideline, whether it reflects a policy judgment of Congress or the Commission's 'characteristic' empirical approach," *United States v. Barron*, 557 F.3d 866, 871 (8th Cir. 2009). Nevertheless, Loredo-Olvera asks us to take the district court's alleged "*Kimbrough* error" into consideration as "part of the totality of the circumstances in determining whether the district court committed a clear error of judgment in weighing the appropriate § 3553(a) factors." Though we find that the district court did not commit an error under *Kimbrough* or *Spears*, *see Barron*, 557 F.3d at 871, we have given careful attention to the circumstances of this case, including Loredo-Olvera's lengthy criminal record, his history of violent conduct, and his repeated violations of U.S. immigration laws. In light of these circumstances, we are satisfied that the district court did not abuse its discretion in sentencing Loredo-Olvera to a term of imprisonment at the bottom of the presumptively reasonable guidelines range. *See Ruelas-Mendez*, 556 F.3d at 658.

For the foregoing reasons, we affirm Loredo-Olvera's sentence of 70 months' imprisonment.[2]

_____

[2]We decline to consider a fourth argument put forward by Loredo-Olvera for the first time in a letter filed under Rule 28(j) of the Federal Rules of Appellate Procedure more than two weeks after this case had been submitted—namely, that the district court improperly treated Loredo-Olvera's request for a downward variance as a request for a downward departure. *See, e.g.*, *United States v. Greene*, 513 F.3d 904, 906 (8th Cir. 2008) ("This Court routinely enforces the doctrine of waiver and declines to address arguments a party fails to raise in its opening brief."). Although Loredo-Olvera's letter relies on our recent decision in *United States v. Chase*, 560 F.3d 828 (8th Cir. 2009), *Chase* was not the first case to note the distinction between departures and variances. *Cf. United States v. Robinson*, 454 F.3d 839, 842 (8th Cir. 2006) ("We recognize that pre-*Booker* departures and post-*Booker* variances are not the same. . . . There may well be cases that would not justify a departure under the Guidelines but which are appropriate for a variance."). Accordingly, the fact that *Chase* was decided after this case had been submitted does not provide a good excuse for Loredo-Olvera's belated attempt to raise an argument that he omitted from his opening brief. *See* Fed. R. App. P. 28(j) (providing that a letter "must state the reasons" for advising the court of a supplemental citation, "referring either to [a] page of the brief or to a point argued orally").