In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-4258

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN H. STOTLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07 CR 30116—**Jeanne E. Scott,** *Judge.*

ARGUED OCTOBER 5, 2009—DECIDED JANUARY 14, 2010

Before EVANS and SYKES, *Circuit Judges*, and SIMON, *District Judge.**

EVANS, *Circuit Judge.* After a short jury trial, John Stotler was found guilty on two counts: attempted possession of a listed chemical—pseudoephedrine—with intent

* The Honorable Philip P. Simon, United States District Court Judge for the Northern District of Indiana, sitting by designation.

to manufacture methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(c)(1), and possession of methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He was sentenced to a term of 110 months. On this appeal, Stotler argues that the district court erred when it denied his pretrial motion to suppress evidence seized from a search of his truck and when it allowed the government to put some Rule 404(b) evidence before the jury. We start with the facts.

Beginning in 2006, law enforcement officers in the area of Quincy, Illinois, had information regarding Stotler's involvement in the manufacture of methamphetamine. They knew that in 1999 he was convicted in California of manufacturing methamphetamine. Also, in early 2006, officers responded to a report of shots fired at Stotler's residence. After arriving at his home, officers observed several items known to be used in the methamphetamine-making business: over 100 pseudoephedrine pills hidden in an oven, a scale, lithium batteries, sulfuric acid, salt, and one gallon of Coleman camping fuel. They also found glass vials containing methamphetamine residue.

With this information, law enforcement tabbed Stotler as a meth-maker-dealer—and they kept their eyes on him. When the heat is on, most people curtail, or at least slow down, their illegal activity. But Stotler decided to put another item in law enforcement's growing basket of evidence against him. He opted to purchase enough pseudoephedrine (the number one ingredient necessary for making meth) to choke a horse.

Illinois law prohibits a person from purchasing more than a small amount of pseudoephedrine during any 30-day period without a prescription. In addition, federal law prohibited possessing any amount of pseudoephedrine with the intent to use it for making methamphetamine. To comply with state law, over-the-counter distributors of pseudoephedrine are required to document their sales to individual customers. This documentation includes a requirement that the customer produce a photo ID and provide personal information when making a purchase of pseudoephedrine.

During a less-than-30-day period between April and May 2006, Stotler purchased more than the maximum amount of pseudoephedrine permitted under Illinois law. Specifically, on April 19, 2006, he purchased 2,400 milligrams of pseudoephedrine from a Wal-Mart store, and on May 15 and May 17 he purchased 2,400 milligrams and 2,880 milligrams of pseudoephedrine from two Walgreens stores. The Walgreens stores and the Wal-Mart were located in the Quincy area.

On August 15, 2006, an Illinois state judge issued an arrest warrant for Stotler charging him with possessing an excessive amount of pseudoephedrine. The warrant remained outstanding as of April 20, 2007. All this information was in law enforcement's basket when a chap named Michael Childress got involved in the case.

On April 19, Childress was acting as a confidential source for law enforcement officers. He advised an officer that he was in contact with Stotler and that Stotler wanted to purchase pseudoephedrine. The officer instructed

Childress to tell Stotler that he (Childress) had 1,500 pills available for sale at a price of $600. Later that day, Childress told the officer that he had talked with Stotler, who said he would buy the pills. According to Childress, Stotler said he would be at Childress's home in Quincy the following day to do the deal. At that time, Stotler lived some 35 miles outside of Quincy.

With this information, officers made arrangements to have Childress sell pseudoephedrine to Stotler. The next day, April 20, officers met with Childress at his residence and gave him 1,500 pseudoephedrine pills. Childress was instructed to sell the pills for $600 and to contact officers by phone after the deal went down. Officers then maintained surveillance of Childress's residence while waiting for Stotler to arrive.

Just as Childress said, Stotler arrived at the appointed time and place in a GMC pickup truck that afternoon. One officer observed Stotler and Childress meeting and talking outside the residence. Shortly thereafter, officers saw Stotler return to his pickup and start to leave. He was then stopped by officers within 100 feet of Childress's house.

After getting out of the truck, Stotler was directed by officers to put his hands above his head, but he refused. An officer then pinned him against the truck, advised him of the outstanding arrest warrant, and directed him to place his hands behind his back. Stotler again refused. He was then forced to the ground and handcuffed.

During a search of his person, officers seized $600 from his right front pocket and $250 from his left front pocket.

They also searched the cab of Stotler's truck and seized a plastic baggie containing Hydrocodone pills (a controlled substance) from inside the glove compartment. Officers then searched the bed of the truck where they found a paint gun bearing Stotler's initials. Inside the gun were two plastic baggies containing approximately 8 grams of methamphetamine and one baggie containing a powdery substance labeled as "cut," an apparent reference to a common substance used in the distribution of narcotics. Finally, officers seized a small bag, located near the paint gun, that contained a digital scale. These events led to the charges against Stotler in federal court.

Once charged, Stotler filed a motion to suppress the evidence obtained from the search of his pickup truck. Following an evidentiary hearing, a magistrate judge recommended that the motion be denied. In his recommendation, the judge concluded that the search of the truck was valid based on the existence of probable cause at the time Stotler arrived at Childress's residence and, alternatively, that the evidence seized during a search of the cab of the truck as incident to the defendant's arrest provided probable cause to search the bed of the truck.

The district judge adopted the magistrate judge's recommendation and denied the motion. Her only disagreement with the magistrate was that she concluded that probable cause existed to search the truck when Stotler drove away from Childress's residence, not when he initially arrived on the scene.

Stotler relies, for the most part, on *Arizona v. Gant*, 129 S. Ct. 1710 (2009), which was decided 10 months after he

went to trial. He says *Gant* supports his argument that the evidence seized from his pickup truck should have been suppressed.

In *Gant*, the defendant (Rodney Gant) was arrested for driving with a suspended license. He was handcuffed and locked in the back of a patrol car. Police officers then searched his car and discovered cocaine in the pocket of a jacket on the back seat. Because Gant did not have access to his car to retrieve weapons or evidence at the time of the search, the Supreme Court held that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, as defined in *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969), and applied to vehicle searches in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L.Ed.2d 768 (1981), did not justify the search of the car. His case, Stotler maintains, is indistinguishable from *Gant*. We disagree.

In *Belton*, the Supreme Court said, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. 454, 460 (1981). *Gant* backed off a bit from *Belton* and held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. 1710, 1723 (2009).

In *Gant*, the only thing the police knew about the defendant when they saw him driving his car was that he had a

suspended driver's license. He was stopped, arrested, removed from his vehicle, handcuffed, and locked in the back seat of a prowler. And then the police searched his car. No independent probable cause to search the car existed when it was searched. Stotler's stop, on the other hand, was quite different. It was the culmination of an investigation that included many facts. His is a true "totality of the circumstances" case. What did the police know? Although we have mentioned most of this already, they knew an awful lot about Stotler when he was stopped. In order, they knew: that Stotler was convicted of manufacturing meth in 1999; that he was subsequently involved in the manufacture of meth based on the seizure of materials used to manufacture it from his residence in January 2006; that he purchased a lot of pseudoephedrine in April and May 2006; that he drove his truck some 35 miles that afternoon to arrive, just as Childress said he would, to purchase 1,500 pseudoephedrine pills; that he left soon after meeting with Childress; and that he resisted arrest when stopped, most likely because he had something to hide. Given these facts, we think the officers had probable cause to believe that the truck contained, at the very least, evidence of something that could be used in manufacturing methamphetamine.

Two things, arguably, point the other way. First, the police didn't get a phone call from Childress telling them that the deal went down. But that can be explained because the "meeting" went quickly, and it took place outside, not inside, Childress's home. Plus, Stotler tried to drive away soon after conversing with Childress.

That there was not enough time for Childress to get off a call is just as likely as the conclusion that Stotler got cold feet before doing the deal. Stotler also says that once the police found $600 (six $100 bills) on his person they should have known that the deal with Childress did not go down. Although we acknowledge that the point is certainly logical, it's not the only inference—perhaps Stotler had $1,450 on him when he arrived to meet with Childress, not just $850.

True, as our dissenting colleague notes, Stotler was arrested on the August 15, 2006 state warrant. That, however, doesn't detract from the fact that the officers also had probable cause to arrest him (and search his truck) for engaging in what certainly looked like an illegal pseudoephedrine transaction. That Childress later reported, after the arrest and search, that the deal didn't go down as planned because Stotler wanted to check out the ingredients in the pills at a Wal-Mart before coughing up $600 for them, doesn't dilute the probable cause that existed.

Considering the totality of the circumstances, we think the district judge was correct when she found that probable cause existed to search the truck because it was reasonable to believe that it contained evidence of, at the very least, an attempt to possess materials (pseudoephedrine) needed for making meth. Because probable cause existed, the search of the truck, both cab and bed, was authorized under the automobile exception to the warrant requirement. *See United States v. Ross*, 456 U.S. 798, 820-21 (1982). That rule, recalled in *Gant*,

remains unchanged. The legality of the search here need not rest on the "search incident to arrest" exception to the warrant requirement.

To all this, we add a final point. The inevitable discovery doctrine holds that even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means.[1] *Nix v. Williams*, 467 U.S. 431 (1984). *See also United States v. Marrocco*, 578 F.3d 627 (7th Cir. 2009). If the police had not searched Stotler's pickup when they did, the evidence would have undoubtedly been discovered a little later. Obviously, with Stotler in custody, he was not going to be allowed to get in his truck and drive away. Also obviously, the arresting officers would not have allowed the truck to just sit on the street after Stotler was carted away. What they would have done, in all likelihood, was impound the truck and have it towed away. An inventory search would have naturally followed; the evidence would have been inevitably discovered. That said, we move to the 404(b) matter.

---

[1] Concerning inevitable discovery, our dissenting colleague notes that the government "made no record on this point in the district court." True enough. But to give the government its due, it certainly could have reasonably believed (recall that *Gant* was decided 13 months *after* Stotler's suppression motion was denied and 10 months *after* he was convicted by a jury) that it didn't need an extra reason to be able to use its full arsenal of evidence against Stotler during future proceedings.

Back in 2005, a detective with the Scott County, Iowa, sheriff's office responded to a call from a representative of a Target store in Davenport, Iowa, concerning a man who had just purchased a large amount of pseudoephedrine. The detective was given a description of the man and his car. Officers subsequently located the car in a Walgreens parking lot in Davenport. Cheryl Flesner was alone in the car. The detective entered the store and observed Stotler purchase two boxes of pseudoephedrine. Stotler then returned to his car, and he and Flesner drove to another Walgreens store in Davenport. Upon arrival there, Flesner entered the store and Stotler remained outside. She returned to the car a few minutes later. Stotler and Flesner then traveled to a third Walgreens store. This time Stotler entered the store while Flesner waited outside. The detective followed Stotler into the store and again observed him purchase two boxes of pseudoephedrine. After they left the store and headed toward the Illinois state line, officers initiated a traffic stop and obtained Stotler's consent to search the car.

During the search of the car, officers seized a map of the Davenport area, which highlighted the location of the Walgreens stores Stotler and Flesner had just visited. In addition, officers seized a notebook which contained addresses of two other Walgreens stores. Finally, officers seized numerous packages of pseudoephedrine, receipts for their purchase, approximately 514 pseudoephedrine pills (totaling approximately 30.6 grams), some of which had been removed from the packaging, an eight-pack of lithium batteries, and a smoking-pipe from Flesner's purse.

A security video, later retrieved from the Target store, showed that Stotler and Flesner made individual purchases of pseudoephedrine and walked out of the store separately.

This was the 404(b) evidence the judge allowed the jury to hear. The rule provides that evidence of prior acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but not to prove a defendant's character in order to show he acted in conformity with the charged offense. We apply a four-part test to decide whether Rule 404(b) evidence was properly admitted and will find no error if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008). And we think it's not even a close question: the Iowa evidence clearly passed the test. It was admissible for whatever bearing it might have on a crucial issue in this case—Stotler's intent on April 20, 2007.

For these reasons, the judgment of the district court is AFFIRMED.

SYKES, *Circuit Judge*, dissenting.  I agree with my colleagues that when John Stotler's truck was searched on April 20, 2007, Illinois law enforcement had reason to believe he was a meth-maker-dealer. But that alone doesn't validate the search under the Fourth Amendment. As this case comes to us, there are at least three impediments to affirming the denial of Stotler's suppression motion—one legal, one factual, and one procedural.[1]

First, the legal landscape on vehicle searches has changed since the time of Stotler's trial. The Supreme Court's decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), has removed the primary justification for the search of Stotler's truck.[2] *Gant* rejected a broad reading of *New York v. Belton*, 453 U.S. 454 (1981), under which a search of a vehicle incident to the arrest of a recent occupant was generally permissible. As applied to vehicles, the search-incident-to-arrest exception is now significantly narrowed. As my colleagues note, *Gant* held that the "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1723.

Here, the district court held—and everyone agrees—that Stotler was arrested on the August 15, 2006 state warrant

---

[1]  I agree with my colleagues that Stotler's evidentiary argument based on Rule 404(b) is meritless.

[2]  *Gant* applies here because it was decided while this case was on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987).

for overbuying pseudoephedrine during the months of April and May of 2006, *not* for attempting to purchase 1,500 pseudoephedrine pills from Michael Childress on April 20, 2007. The district court upheld the search of Stotler's truck primarily because it was permissible incident to his arrest on the 2006 warrant. That basis for the search is no longer valid. Stotler was removed from the scene and therefore was not within reaching distance of the passenger compartment when his truck was searched. And there is no reason to believe that his truck would contain evidence of the crime of arrest, which occurred a year earlier in April-May 2006. In short, *Gant* has eliminated one justification for this search; the police were not authorized to search the truck incident to Stotler's arrest.

The alternative justification for the search—that there was probable cause to believe that Stotler's truck contained evidence of a crime—simply is not supported by the record, or at least by the portion of the record on which the government has relied. It is true that the police had some background information about Stotler that identified him as a meth-maker-dealer. They were aware of his 1999 California conviction for manufacturing methamphetamine. They also knew that materials used to manufacture meth had been found at his residence in January 2006 and that he had purchased excessive amounts of pseudoephedrine (a meth "precurser" in narcotics-investigation nomenclature) in April-May 2006. This information, however, is severely attenuated in time; Stotler's meth-making activities in the first half of 2006 can only be a small component of the

probable-cause equation for a search of his truck a year later. More pertinent is what law enforcement knew about Stotler's activities in or around April 20, 2007, when the search took place, and what they saw during the controlled transaction between Stotler and Childress on that date. And on this more important point, the evidence falls short.

The record reflects that in April 2007 Childress was working with law enforcement to reduce his exposure on his own meth-related charges. He arranged to sell Stotler 1,500 pseudoephedrine pills for the purchase price of $600. The transaction was set to occur at Childress's home in Quincy, Illinois, at 5 p.m. on April 20, 2007, and law-enforcement officers supplied Childress with the 1,500 pseudoephedrine pills for purposes of the controlled sale. The pills were labeled SUDAFED SINUS NIGHTTIME PLUS PAIN RELIEF—large pills packaged in 10-pill blister packs and contained within a white, kitchen-sized, plastic garbage bag (admitted as Exhibit 18AA at trial). Childress put this bulky package in his truck, which was parked in the driveway of his home. Stotler arrived at the appointed time, pulled into the driveway, and got out of his truck.

Here's where there's a gap in the evidence. Although law enforcement had the scene under surveillance, none of the officers who testified—either at the suppression hearing or at trial—saw any transaction occur. Nothing changed hands. As it turns out, only two of the surveillance officers—Sergeant Patrick Frazier and Special Agent Seth Knox—were in a position to see anything at all, and they testified that they saw only a brief conversation

between Stotler and Childress at the back of Stotler's truck. Nothing more.

In fact, Deputy Sheriff Matt McElfresh, who was apparently in charge of this operation, had at the outset instructed the police personnel at the scene to arrest Stotler on the August 2006 warrant as soon as he started to leave Childress's driveway. This was the instruction *regardless* of what transpired between Stotler and Childress. So it was not important whether the officers could see what actually happened between the two; Stotler was going to be arrested *whether or not* the transaction was completed. What this means as a factual matter is that there is no evidence to establish that the officers had reason to believe the planned transaction actually occurred. This in turn means there is no factual basis for finding probable cause to believe Stotler's truck would contain evidence of a crime. All we know is that Stotler got back in his truck, empty-handed, after a brief conversation with Childress, and when he started to leave, officers immediately blocked his exit and moved in to arrest him. He was searched and found in possession of $600—six $100 bills—which was the purchase price for the 1,500 pseudoephedrine pills. All this suggests that the officers had reason to believe the planned transaction did *not* in fact occur, rather than the opposite.[3]

---

[3] As my colleagues point out, after Stotler was arrested and the search of his truck had begun, Childress explained to the officers that the transaction had not in fact been completed because

(continued...)

My colleagues have concluded that "the district judge was correct when she found that probable cause existed to search the truck because it was reasonable to believe that it contained evidence of, at the very least, an attempt to possess materials (pseudoephedrine) needed for making meth." Maj. op. at 8. I disagree. First of all, the district judge did *not* find there was probable cause to believe the truck contained evidence of an attempt to possess meth-making materials. She entered a generic finding that there was probable cause to believe the truck would contain evidence of a crime without specifying what crime she had in mind. I suppose we can infer that it was either an attempt or a completed crime of pseudoephedrine possession, but the record doesn't establish probable cause to believe that the truck would contain evidence of either.

First, it is hard to see how there could be probable cause to believe Stotler's truck would contain evidence of a crime if (as my colleagues conclude) that crime was an attempt to possess pseudoephedrine. To state the obvious, if the crime was an *attempt* to possess pseudoephedrine, it means the drugs never changed hands; as such, there is no reason to believe that the drugs would be found in Stotler's truck. And the record is insufficient to support probable cause to believe the

---

[3] (...continued)
Stotler was not sure the pills were usable and wanted to go to a Wal-Mart to check their ingredients before making the purchase.

truck would contain evidence of a *completed* act of pseudoephedrine possession because there is no evidence suggesting the officers had reason to believe the transfer of pseudoephedrine actually occurred. The bag of pills was large and highly visible; if it had actually changed hands and been placed in Stotler's truck, the surveillance officers surely would have seen this. But they did not see this—nor did they see any activity that could reasonably be construed as a hand-to-hand drug transaction—because it did not occur.

It bears repeating that the officers were going to arrest Stotler on the 2006 warrant regardless of whether the transaction was completed, and at the time, they were authorized under *Belton* to search his truck incident to that arrest. And that's what they did. But now, because of the Supreme Court's intervening decision in *Gant*, that basis for the search is no longer valid. An independent justification for the search is therefore required, and the record simply doesn't supply it.

I appreciate that neither the police nor the prosecutors anticipated *Gant*; their conduct in the field and in the district court was obviously informed by the prevailing broad reading of *Belton*. But I cannot cobble together an alternative justification for this search based on what the government has given us. My colleagues suggest that if all else fails, we may affirm based on the inevitable-discovery doctrine. It is likely, they say, that Stotler's truck would have been impounded after his arrest and an inventory search would have "naturally followed." Maj. op. at 9. Perhaps so. But the government has never argued that admitting the evidence from this search was

permissible based on inevitable discovery. It is the government's burden to prove the elements of this doctrine, *Nix. v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Marrocco*, 578 F.3d 627, 638 (7th Cir. 2009), and it made no record on this point in the district court. Nor, as I have noted, has the government even bothered to argue inevitable discovery on appeal.[4] It is axiomatic that arguments not raised on appeal are waived. *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009); *United States v. Johnson*, 335 F.3d 589, 592 (7th Cir. 2003). This rule applies to the government too.[5]

---

[4]  Neither has the government raised the good-faith exception to the exclusionary rule as a basis to affirm. *See United States v. Leon*, 468 U.S. 897 (1984).

[5]  There is some evidence in the suppression-hearing record that might have bolstered the case for probable cause had the government developed it. Agent Knox offered brief testimony about information he had from a confidential informant named David Mann about Stotler's meth-dealing activities in the month of April 2007, just a few weeks before the search of Stotler's truck. The district court did not mention this testimony, and the government did not raise it on appeal as either additional or alternative support for affirming the court's denial of Stotler's suppression motion.