In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-3732 & 09-3755

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ORLANDES NICKSION and MARK CUBIE,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 2:05-cr-00146-CNC—**Charles N. Clevert, Jr.**, *Chief Judge.*

ARGUED OCTOBER 20, 2010—DECIDED DECEMBER 9, 2010

Before FLAUM, RIPPLE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Orlandes Nicksion and Mark Cubie, along with several others including Nicksion's cousin, Ronald Terry,[1] were charged with drug trafficking

---

[1] Terry pled guilty to drug trafficking conspiracy and was sentenced to a term of 260 months' imprisonment. He appealed

(continued...)

conspiracy and various drug and gun offenses. After withdrawing his guilty plea,[2] Nicksion proceeded to trial. A jury subsequently convicted him of drug trafficking conspiracy, in violation of 21 U.S.C. § 846, aiding the discharge of a firearm during the drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to a total term of 480 months' imprisonment. Cubie pled guilty—and did not seek to withdraw his plea—to drug trafficking conspiracy, in violation of 21 U.S.C. § 846, and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), while preserving pretrial issues for appeal. He was sentenced to a total term of 295 months' imprisonment.

Both men now appeal but challenge different rulings. Nicksion argues that his confrontation clause rights were violated at trial when the district judge admitted out-of-court statements implicating Nicksion in the homicide of Earl Benion, which was used to prove the firearm offense under § 924. Cubie, on the other hand, argues that his pretrial motion to suppress evidence seized from

---

[1] (...continued)
an adverse decision on a pretrial matter, and we affirmed. *See United States v. Terry*, 572 F.3d 430 (7th Cir. 2009).

[2] Nicksion sought withdrawal because he did not understand when he pled guilty that the government might argue at sentencing that a 2002 homicide (discussed later in this opinion) was attributable to him.

his car during a traffic stop was improperly denied. He also contends that the district judge should have granted his request for a pretrial proffer or hearing regarding the admissibility of co-conspirator statements and that the judge made multiple errors at sentencing. We begin with Nicksion and the facts as established at his trial.

The trial consisted of two main components: the drug trafficking conspiracy and the Benion homicide. Nicksion's arguments on appeal only concern the latter. To briefly summarize the former, the evidence showed that, from 2002 to 2005, Nicksion, Cubie, Terry, and others were involved in procuring large quantities of cocaine, crack, and marijuana from Chicago sources for distribution in Milwaukee, Wisconsin. In general, Nicksion and Cubie would obtain the drugs and provide Terry with a supply to sell. The conspirators used an apartment in a duplex owned by Nicksion's great-uncle, Robert Bridges, and his wife for drug trafficking. At times, Bridges also assisted with drug sales.

The evidence of the homicide showed that, on September 18, 2002, Benion's son, Sirus (age twelve at the time), saw Nicksion and Terry repeatedly drive by his home in a silver Monte Carlo with Illinois plates, while his father was outside. At one point, Nicksion blew Benion a kiss. Terry shot Benion that night, and Benion died the next day.

Immediately after the shooting, Terry, Cubie, Nicksion, Nicksion's father, and Bridges all met in Bridges' apartment. (Nicksion had previously told Bridges, during a meeting with Terry and Cubie, that they intended to

hurt Benion if he did not pay a drug debt.) Over Nicksion's hearsay and confrontation objections, Bridges testified that Terry then confessed to shooting Benion because of the debt owed to Cubie, Nicksion, and Terry. Nicksion was quiet during the meeting. But later, when Benion's obituary appeared in the newspaper, Nicksion told Bridges that Benion "should have paid us our money."

Later that month, Terry got rid of the murder weapon by selling it to Frederick Bonds. (Bonds, a drug dealer by trade, had previously seen Terry with the same gun and had learned from Terry that Benion owed money to Nicksion.) Terry told Bonds that he (Terry) needed to get rid of the gun because it was "hot." Over Nicksion's hearsay and confrontation objections, Bonds testified that Terry said that Nicksion and he went looking for Benion, there was an argument over money, and he (Terry) shot Benion. The gun was later recovered from Bonds and traced to the homicide.

Terry also confessed to Darin Palmer, a childhood friend who worked drug houses with Terry. In the fall of 2003, Palmer learned that Terry's drug source was Nicksion. Over Nicksion's hearsay and confrontation objections, Palmer testified that, about a year later, while in a drug house, Terry said that he killed Benion over a drug debt and had been compensated for the shooting.

Milwaukee police detective Chad Wagner investigated the Benion homicide. Wagner eventually contacted Avis Rent-A-Car after learning of a vehicle that he "believe[d]" was linked to the homicide. Over Nicksion's hearsay objection (he later objected to similar testimony on con-

frontation grounds as well), Wagner testified that an Avis employee told him that, on August 18, 2002, Melissa Zaragoza rented a silver Monte Carlo with Illinois plates. Officers followed up with Zaragoza, who admitted to knowing Nicksion's wife, Nicksion, Benion, and Terry but denied renting the car in question. Eventually, the car was found, but it yielded no evidence regarding the murder or Nicksion.

Prior to his trial, Nicksion was detained for several months with inmate Trenton Gray. Nicksion eventually told Gray that Terry had been involved in the Benion shooting. Nicksion further explained that Terry and he had gone to collect a drug debt from Benion, when Terry shot and killed him.

Nicksion argues that the district judge should not have admitted the testimony of Bonds, Bridges, Palmer, and Wagner. This testimony, Nicksion asserts, was the only evidence linking him to the Benion homicide, which, to repeat, supported his firearm conviction under § 924. In his opening brief, Nicksion only appears to invoke the confrontation clause of the Sixth Amendment, making our review *de novo*. *United States v. Turner*, 591 F.3d 928, 932 (7th Cir. 2010). In his reply brief, however, Nicksion claims that he also raised a hearsay argument. That issue, if properly preserved, is reviewed for an abuse of discretion. *United States v. Harris*, 585 F.3d 394, 398 (7th Cir. 2009).

Bonds, Bridges, and Palmer all testified that Terry confessed to shooting Benion while Nicksion and Terry were trying to collect on a drug debt. As Nicksion con-

cedes, there is no confrontation clause problem here because Terry's statements were not testimonial. *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006) (holding that, under *Crawford v. Washington*, 541 U.S. 36 (2004), the confrontation clause applies only to testimonial hearsay); *see also Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S. Ct. 2527, 2536 (2009) (explaining that *Ohio v. Roberts*, 448 U.S. 56 (1980), was overruled by *Crawford*). The government argues that this resolves the matter because Nicksion did not preserve a hearsay argument in his opening brief. *See United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007) (stating that arguments not raised in the opening brief are waived).

Even giving Nicksion the benefit of the doubt on the preservation issue, Terry's statements were made in furtherance of the conspiracy and therefore admissible under Federal Rule of Evidence 801(d)(2)(E). Terry's statement to Bonds was made in an attempt to get rid of the murder weapon. He made his statement to explain why he needed to sell the gun—namely, because it was "hot." Terry's statement to Bridges occurred immediately after the shooting, while he and his co-conspirators, including Nicksion, were discussing how to handle it.[3] The statement to Palmer was more attenuated from the homicide but still furthered the conspiracy. Specifically, Terry confessed at a drug house, while he

---

[3] Because Nicksion heard but did not object to Terry's confession to Bridges, the statement was also admissible under Rule 801(d)(2)(B).

was working for Nicksion and Cubie, in an effort to explain his relationship with them to a fellow drug dealer.

Detective Wagner's testimony is a little trickier because it implicates the confrontation clause. The government's first argument on this issue is that Nicksion is now challenging testimony to which he did not object at trial. Nicksion's complaint on appeal is with Wagner's statement that he "believe[d]" that an Avis rental car was linked to the homicide. And, in fact, there was no objection to this testimony at trial. Later, when Wagner said that an Avis supervisor told him that, shortly before the murder, Melissa Zaragoza rented a silver Monte Carlo with Illinois plates, Nicksion finally lodged an objection. As that statement was clearly not offered for the truth of the matter asserted—that is, the government was not trying to prove that Zaragoza rented the car in question— it is not surprising that Nicksion has abandoned the argument. We may still review the admission of Wagner's preceding testimony regarding his "belief," but only for plain error. *See United States v. Akinrinade*, 61 F.3d 1279, 1283 (7th Cir. 1995).

Even assuming an "error" that was "plain" (a stretch, considering that Wagner never recounted statements that he solicited to form his "belief" and simply appeared to be explaining the course of his investigation), the testimony clearly did not affect Nicksion's "substantial rights." S*ee United States v. Olano*, 507 U.S. 725, 732 (1993). First, other evidence supported a connection between the car and the homicide. Zaragoza, in whose name the car was rented, admitted to knowing Nicksion's

wife, Nicksion, Benion, and Terry. And Sirus Benion, the 12-year-old boy you'll recall, testified that he saw Nicksion and Terry repeatedly drive by his house in a silver Monte Carlo with Illinois plates on the day of his father's shooting. Second, Terry's confessions to Bonds, Bridges, and Palmer, which we already deemed admissible, were enough to implicate Nicksion.

But the final nail in the coffin is that *none* of the challenged statements were necessary to prove Nicksion's firearm offense. Nicksion himself admitted (or so the jury under the circumstances could easily conclude) to his involvement in the murder by: (1) telling Bridges, upon seeing Benion's obituary, that Benion "should have paid us our money" and (2) telling Gray that Terry and he had gone to collect a drug debt from Benion, when Terry shot and killed him. And let's not forget that the gun that Terry sold to Bonds was determined to be the murder weapon. Thus, any error in the admission of the statements was clearly harmless. *See United States v. Martin*, 618 F.3d 705, 730 (7th Cir. 2010) (applying harmless error analysis to confrontation clause violation); *United States v. Sawyer*, 558 F.3d 705, 713-14 (7th Cir. 2009) (applying harmless error analysis to hearsay violation). Having rejected Nicksion's arguments, we now turn to Cubie and the facts as established at the evidentiary hearing on his motion to suppress.

On January 28, 2005, a confidential informant made a controlled purchase of a half kilogram of cocaine from Cubie. In the early afternoon on February 2, the informant made a controlled payment of $5,000 to Cubie for the

previous half kilogram purchase. After the payment, law enforcement kept Cubie under constant surveillance and observed him making numerous stops and engaging in what appeared to be other drug-related transactions.

That evening, detective Kenneth Smith advised officers Brian Brosseau and Dennis DeValkenaere of the investigation into Cubie's drug trafficking, the controlled drug buy on January 28, and the controlled drug payment earlier that day. Smith also said that other officers had seen Cubie participate in what they believed to be a drug transaction a short time (approximately 20 minutes) previously. Smith requested that Brosseau and DeValkenaere stop Cubie's car.

Brosseau and DeValkenaere both testified that, when they caught up to Cubie's vehicle, he changed lanes quickly without using a turn signal, causing Brosseau to slam on his brakes. There were minor inconsistencies in the officers' testimony—for example, Brosseau testified that Cubie veered suddenly to the left, while DeValkenaere said that Cubie veered suddenly to the right. According to Cubie's passenger, Donald Buchanan, however, Cubie never made any abrupt lane changes. Minor inconsistencies aside, Brosseau activated his siren and pulled Cubie's car over.

Brosseau approached Cubie, explained that he had stopped him for a traffic violation, and asked for identification. Cubie calmly reached into the back seat and retrieved his license from a black leather briefcase. He ultimately was issued a traffic ticket. Because of the information he received from Smith regarding Cubie's

drug activities, Brosseau asked Cubie to get out of the car and stand near the rear of the vehicle. Buchanan was also taken to the rear of the vehicle.

DeValkenaere then requested permission to search the car. According to the officers, Cubie calmly replied, "Yes. Go ahead." Buchanan, however, testified that he never heard Cubie give consent. (Buchanan also testified that he never saw the officers take Cubie out of the vehicle or search the car.) Brosseau began searching and located a .22-caliber pistol in the car's center console. The officers then placed Cubie and Buchanan in handcuffs. DeValkenaere continued to search the car and found cocaine, marijuana, and money in the black leather brief-case. He also found a white grocery bag containing money under the front driver's seat.

In his recommendation to the district judge, a magistrate judge found that Brosseau and DeValkenaere were credible witnesses and Buchanan was not. The magistrate judge also found that: (1) the stop of Cubie's vehicle was justified based on his traffic violation; (2) the officers had probable cause to stop and arrest Cubie based on the January 28 drug buy and the February 2 drug payment; and (3) the search of the car was justified both under the search-incident-to-arrest exception in *New York v. Belton*, 453 U.S. 454 (1981), and because Cubie gave voluntary consent. The district judge adopted the magistrate judge's recommendation and denied the motion to suppress. He also hinted—but did not decide—that the stop was also justified based on the collective knowledge of the officers about Cubie's illegal activities earlier that day.

Cubie argues that his motion was improperly denied. When considering a motion to suppress, we review legal questions *de novo* and findings of fact and credibility determinations for clear error. *United States v. Wesela*, 223 F.3d 656, 660 (7th Cir. 2000). Probable cause determinations are mixed questions of law and fact that we review *de novo*. *United States v. Williams*, ___ F.3d ___, 2010 WL 4157339, at *3 (7th Cir. Oct. 25, 2010). A finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake has been made." *United States v. Gravens*, 129 F.3d 974, 978 (7th Cir. 1997).

Cubie first claims that the stop of his vehicle was illegal because he did not commit a traffic violation. This argument is easily dismissed because Cubie is basically taking issue with the magistrate judge's credibility determinations. To repeat, the judge found that the officers, who said that Cubie deviated from his lane (they only disagreed on minor details), were credible witnesses, and Buchanan, who said that Cubie did not deviate from his lane (he also said that the officers never removed Cubie or searched the vehicle), was not. There is no evidence of clear error on this point.

Cubie next argues that the officers did not have probable cause to arrest him. Under the "collective knowledge" doctrine, the officers who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of other officers. *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005). In other words, "[t]here is no Fourth Amendment violation if the knowledge of the

officer directing the stop, search, or arrest—or the collective knowledge of the agency for which he works—is sufficient to constitute probable cause." *Williams*, 2010 WL 4157339, at *4.

Here, law enforcement collectively knew that: (1) a confidential informant made a controlled drug purchase from Cubie five days earlier; (2) the informant made a controlled drug payment of $5,000 to Cubie on the day of the stop; and (3) Cubie engaged in what appeared to be other drug transactions shortly before the stop. This information, which provided sufficient reason to believe that Cubie had committed a crime, may be imputed to Brosseau and DeValkenaere, who were in communication with Smith. *See United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992) ("[W]hen officers are in communication with each other while working together at a scene, their knowledge may be mutually imputed even when there is no express testimony that the specific or detailed information creating the justification for a stop was conveyed.").

Cubie's biggest complaint is that the officers were not justified in searching his car, either under the search-incident-to-arrest exception or a theory of voluntary consent. Regarding the former, Cubie relies heavily on *Arizona v. Gant*, ___ U.S. ___, 129 S. Ct. 1710 (2009), which was decided four months after final judgment was entered in his case. As we recently recognized in *United States v. Stotler*, 591 F.3d 935 (7th Cir. 2010):

> *Gant* backed off a bit from *Belton* and held that "[p]olice may search a vehicle incident to a recent occupant's

arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."

*Id.* at 939 (quoting *Gant*, 129 S. Ct. at 1723).

But we also noted that *Gant* explicitly recalled, and did not curtail, the automobile exception to the warrant requirement in *United States v. Ross*, 456 U.S. 798 (1982). *Stotler*, 591 F.3d at 940; *see also Gant*, 129 S. Ct. at 1721. Under that rule, if there is probable cause to believe that a vehicle contains evidence of criminal activity, police may search any area in which the evidence might be found. *Gant*, 129 S. Ct. at 1721. Thus, unlike the searches described in the final clause of the holding in *Gant*, "*Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Id.*

Here, as we previously discussed, law enforcement had Cubie under constant surveillance on the day of the stop and saw him accept a $5,000 drug payment and engage in other drug transactions. In addition to justifying Cubie's stop and arrest, this information also provided sufficient reason to believe that the vehicle (and any vessels inside the vehicle) contained at least the buy money and probably other evidence of drug trafficking. The fact that Brosseau and DeValkenaere actually may have relied on other justifications for the search, such as the search-incident-to-arrest exception or Cubie's purported consent, is irrelevant. *See Williams*, 2010 WL 4157339, at *6-7. So the denial of Cubie's motion to suppress stands.

Cubie's remaining arguments merit little discussion. First, he argues that the district judge improperly denied his request for a pretrial proffer or hearing regarding the admissibility of alleged co-conspirator statements. This ruling, Cubie maintains, had a substantial impact on his decision to enter a guilty plea. We review the judge's decision for an abuse of discretion. *United States v. Hunt*, 272 F.3d 488, 494 (7th Cir. 2001).

Under *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), a district judge must make a ruling on the admissibility of co-conspirator statements prior to their formal acceptance as evidence at a trial. We have, however, approved various procedures for fulfilling this requirement, including conditionally admitting the evidence *without a proffer* or *pre-trial hearing* subject to eventual supporting evidence at trial (risking, of course, a possible mistrial). *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991). This is exactly what happened here. The district judge ruled that he would conditionally admit the alleged co-conspirator statements, which the government had already disclosed to counsel for all defendants in discovery materials, subject to supporting proof at trial. So there was no abuse of discretion. Moreover, this is a no-harm-no-foul situation because the judge eventually found that the government had provided sufficient supporting proof to admit the evidence at Nicksion's trial. The statements therefore would have been admissible against Cubie had he not pled guilty.

Cubie next challenges the district judge's calculation of drug quantity at sentencing. We review this factual

finding for clear error. *United States v. Krasinski*, 545 F.3d 546, 551 (7th Cir. 2008). Cubie says that a "fair estimate" of the drug quantity attributable to him is 49.9 kilograms of powder cocaine, which would put him at a base offense level of 34, instead of 36. To get to that amount, he dismisses as "unreliable" a multitude of evidence of additional drug weight in the presentence report (PSR) simply because it was provided by cooperating defendants. This is an insufficient showing of error. *See United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994) ("[A defendant challenging the PSR] must produce some evidence that calls the reliability or correctness of the alleged facts into question.") (citation omitted). But, even ignoring those accounts, Cubie's estimate is still too low because, as the district judge found, Cubie neglected to include the 35 grams of crack seized from him during the February 2, 2005, traffic stop. When that amount is added, Cubie's base offense level is 36.

Cubie also argues that his criminal history category (two) overstated the seriousness of his criminal history. We review a district judge's refusal to apply a lower criminal history category under U.S.S.G. § 4A1.3 for an abuse of discretion. *United States v. Turner*, 569 F.3d 637, 643 (7th Cir. 2009). Cubie's first contention—that his only prior drug conviction (for PCP distribution) involved a case that had "languished for five years" before being resolved—is frivolous because it is based on a typographical error in the PSR. Moreover, Cubie was on supervision for another drug offense when he was arrested for PCP distribution. Cubie's criminal history,

unlike the one described in application note three to § 4A1.3, therefore does not involve merely "minor" offenses. The district judge was well within his discretion to find that Cubie's criminal history category was appropriate.

Cubie next claims that information regarding the Benion homicide should have been excised from the PSR, even though the district judge ruled that he would not consider it at sentencing and took steps to insure that it would not affect Cubie's prison status. But Cubie cites no authority for this assertion and fails to identify any harm or request a remedy. So the argument is waived. *See United States v. Wimberly*, 60 F.3d 281, 287 (7th Cir. 1995).

Cubie's last argument—that his sentence was unreasonable—suffers from the opposite problem. That is, other than repeating his criminal history, Cubie's analysis is wholly comprised of legal conclusions without any factual support. Failing to identify anything about his background or the offense that would call into doubt the district judge's determination, Cubie cannot possibly overcome the presumption of reasonableness that we apply to his within-guidelines sentence. *See United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010).

For the foregoing reasons, the judgments of the district court are AFFIRMED.