NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2012
Decided August 13, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-3805

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
|     *v.* | No. 1:09-CR-103-TLS |
| STANLEY BENNETT, <br>     *Defendant-Appellant.* | Theresa L. Springmann, <br> *Judge*. |

**O R D E R**

After a two-day jury trial, Stanley Bennett was convicted of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and sentenced to 60 months' imprisonment. On appeal, Bennett challenges the denial of his pretrial motion to suppress the firearm as the product of an illegal, warrantless search. Because the inevitable-discovery doctrine justifies the warrantless search, we affirm.

In October 2009, Officer Phillip Ealing was dispatched to Pontiac and Oliver Streets in Fort Wayne, Indiana, where a black male wearing a black jacket and jeans was reportedly shooting a gun. When Ealing arrived on Oliver Street he saw Bennett, in a black jacket and

jeans, firing a small, silver revolver into the air. Ealing drew his gun, pointed it at Bennett, and ordered him to drop the gun. Bennett looked in Ealing's direction and then darted into the house. About 30 seconds later, he returned to the porch without the revolver and sat down on the top step. Ealing was soon joined by Officer John Drummer, and the officers ordered Bennett to get on the ground. Ealing handcuffed Bennett—who appeared to the officers to be heavily intoxicated—and put him in the patrol car.

After Bennett was secured, Drummer and several other officers who had arrived at the scene entered the house to conduct a protective sweep. The officers found Bennett's mother, Mary, and brother, Charlie, but did not find the gun. Drummer asked Mary for consent to search the house, which she gave. Under a couch in the living room, Officer Dale Llewellyn then discovered a small revolver containing three live and four spent rounds. Ealing identified the revolver as the same gun he had seen Bennett fire earlier.

Bennett was indicted on one count of possession of a firearm by a felon and pleaded not guilty. He then moved to suppress the gun, alleging that his mother's consent to search the home was invalid because she is "permanently disabled, has limited formal education, and was under duress due to the chaotic nature of the [police] presence at her home." Bennett conceded that his mother—who owns the home—consented immediately, and was neither detained by police nor physically coerced, but he argued that there was no evidence that "she had been properly advised of her rights by police."

The district court held a hearing at which the government glossed over the consent issue and argued that the gun was admissible based on the inevitable-discovery doctrine. Three officers testified that the gun was recovered after obtaining consent for the search but Mary stated that she did not understand what she was signing when she gave consent. Ealing testified that he would have obtained a search warrant if he had not believed there was valid consent, and the government argued that Ealing could have obtained a warrant to find the gun because he had probable cause to believe Bennett had committed felony criminal recklessness, IND. CODE § 35-42-2-2(b), (c)(2)(A).

The district court agreed with the government's position and denied the motion. The court concluded that officers inevitably would have discovered the gun because it was reasonable to believe that they would have sought and obtained a warrant had they not obtained consent to search. The court found that the police already had evidence, before entering the home, of Bennett's reckless gun use and the officers would have continued their efforts to find it by obtaining a search warrant.

On appeal Bennett argues generally that the gun was obtained through an illegal search and that the evidence is thus permanently tainted and the inevitable-discovery

doctrine does not apply. But the district court correctly concluded that the gun was admissible based on inevitable discovery. Even an illegally seized item need not be suppressed if officers would have inevitably discovered it through lawful means. *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010). Here the government showed that, even without the challenged search, officers would have obtained a search warrant and recovered the gun. *United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009); *United States v. Tejada*, 524 F.3d 809, 813 (7th Cir. 2008). Ealing had probable cause to believe that Bennett committed felony criminal recklessness when he fired a gun in the air in a residential neighborhood, IND. CODE § 35-42-2-2(c)(2)(A), and he saw Bennett enter the house with the gun but return to the porch without it. As the district court noted, it is reasonable to conclude that the police would have continued their efforts to locate the missing gun by obtaining a search warrant, which would have been issued given the "fair probability" that evidence of a crime would be found in the house. *See United States v. Miller*, 673 F.3d 688, 692 (7th Cir. 2012). Ealing thus could have, and testified that he would have, obtained a search warrant to recover the gun had he not thought that Bennett's mother validly consented to the search.

AFFIRMED.