In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 07-4052 & 07-4053

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RICHARD WALLACE and DOWNSTATE
TRANSPORTATION SERVICES, INC.,

*Defendants-Appellants*.

———————

Appeals from the United States District Court
for the Southern District of Illinois.
No. 06-40041-GPM—**G. Patrick Murphy**, *Judge*.

———————

ARGUED JUNE 2, 2008—DECIDED JULY 1, 2008

———————

Before EASTERBROOK, *Chief Judge*, and ROVNER and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.   Many people eligible for
health benefits under the Medicaid program do not have
access to automobiles, and many rural areas lack public-
transit systems. So Medicaid will pay the cost of taxicabs
to transport patients between their homes and medical
providers. The program reimburses taxi services at the
"community rate" for "loaded miles." 89 Ill. Admin. Code
§140.492. (Medicaid operates through state agencies, and
Illinois supplies the rules that govern these events.) A

"community rate" is the price set by the public agency with jurisdiction over taxi services, and "loaded miles" are miles traveled with the patient in the taxi. The forms on which taxi companies submit claims for reimbursement include boxes prominently labeled "loaded miles"; a handbook covering transportation services informs businesses that only loaded miles are compensable.

Richard Wallace and his business Downstate Transportation Services (collectively "Wallace") furnished taxi service to Medicaid recipients in 16 rural counties in southern Illinois. Wallace applied for payment on forms that called for truthful statements of "loaded miles." Evidence in this criminal prosecution established, however, that Wallace billed for many miles in which the taxi carried only the driver. For some trips Wallace calculated miles from the driver's base station to the patient's home, to the medical provider, back to the patient's home. For other trips Wallace calculated miles as if the trip started at his headquarters in Carterville, Illinois, and returned there. Wallace collected from Medicaid about $500,000 more than he was entitled to. A jury convicted him of 18 counts of mail fraud, 18 U.S.C. §1341, and health-care fraud, 18 U.S.C. §1347.

Wallace concedes that he billed for unloaded miles. He contends, however, that Carterville has a "community rate" of $1.25 a mile, from the taxi's dispatch point to the passenger's destination, plus a fee of $3.00, no matter how many (or how few) of those miles a passenger is in the taxi. In rural areas it may be sensible to calculate fares that way, because a driver is unlikely to pick up another fare on the way. Wallace says that he understood a "community rate" to cover the flag-pull (pickup) fee, the price per mile, and the miles to which that price would be

applied. The jury did not agree, and the district court denied Wallace's motion for acquittal. 2007 U.S. Dist. LEXIS 49556 (S.D. Ill. July 10, 2007).

Like the district court, we find it impossible to see how Wallace could have been confused. The form requires operators to disclose how many "loaded miles" were provided. The handbook tells transportation firms that they may bill only for loaded miles, at a community rate—that is, the regulated price per mile (or, if there is no regulatory authority, at a rate specified by the Medicaid program itself). If Wallace believed that $1.25 a mile for all miles, loaded and unloaded, was a better deal for Medicaid than some higher price per mile for loaded miles alone, he was free to propose a variance from the program's normal rules. But he did not do that—not, at least, in any way that produced a favorable ruling. He says that his application to participate in the Medicaid program revealed his rate structure, but no responsible official approved it or told him to put all miles in the box labeled "loaded miles." Instead he lied repeatedly, saying in the reimbursement forms that he was charging $1.25 a mile for loaded miles. This deceit made it impossible for the people running the Medicaid program to decide whether Wallace was supplying transportation at a competitive price. He was charging at least $1.75 a loaded mile—how much more is in dispute; that depends on the ratio of loaded to unloaded miles. If other companies were willing to carry patients for $1.50 a loaded mile, Medicaid would have done better to use them. By stating that he was charging only $1.25 a loaded mile, Wallace made his price look lower than it actually was.

That's not Wallace's only problem. Evidence showed that he billed for some phantom miles. When drivers, who

were stationed throughout the 16-county region, picked up passengers near their bases, Wallace sometimes billed as if the trip had started and ended in Carterville, which is farther away. Sometimes Wallace just tacked miles onto what the drivers actually logged. He contends that evidence about fictitious miles should have been excluded under Fed. R. Evid. 404(b), but this proof concerned the charged offense rather than "other" wrongs. The indictment alleged a scheme to bill for travel in addition to loaded miles. Whether these spurious "loaded miles" were unloaded miles, or miles never driven at all, does not matter.

As it happens, Wallace could not prevail even if we were to conclude that a "community rate" includes the rate base (that is, the miles to which the rate is applied) as well as the rate per mile. For Wallace treated Carterville's ordinance as if it were in force throughout 16 counties. It wasn't; it applied only within the City of Carterville, a part of Williamson County. Other cities in the 16-county area, including Carbondale and Marion, had their own rules, and many unincorporated areas had no taxi regulation. A taxi company must use the rates of the jurisdiction in which it picks up passengers. Wallace does not argue that any portion of the 16-country area other than the City of Carterville authorized, let alone required, taxis to charge for unloaded miles, so the bulk of Wallace's Medicaid billings is not supported by his theory that Carterville's "community rate" includes unloaded miles.

This is not to say that the trial was problem-free. The district court should not have allowed the prosecutor to argue that Wallace put one over on Carterville when he persuaded its city council to enact the $1.25/mile-for-all-

miles ordinance. People are entitled to lobby for favorable laws; the first amendment protects self-interested campaigning. See, e.g., *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991). The reason why Carterville enacted its taxi-rate ordinance does not alter the ordinance's effects, and the prosecution's strategy created a risk that the jury might think that defendants were on trial for crafty lobbying (or, worse, political bribery). But the risk was not realized. The instructions focused the jury on fraud in the reimbursement forms, and Wallace does not contend that he might have been convicted for his use of political influence, as opposed to the excessive bills to Medicaid.

Wallace was sentenced to 36 months' imprisonment. He says that this is unreasonably high, even though it was below the bottom of the Guideline range (51 to 63 months). We have never deemed a below-range sentence to be unreasonably high. *United States v. Booker*, 543 U.S. 220 (2005), gave district judges extra discretion without holding that they must be lenient. More discretion means that sentences are easier to justify than before. A 36-month sentence would have been too low before *Booker*; an increase in judicial discretion does not make it too high. See *United States v. Gama-Gonzales*, 469 F.3d 1109 (7th Cir. 2006).

A sentence within the range is presumptively reasonable, see *Rita v. United States*, 127 S. Ct. 2456 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and it follows that a sentence below the range also is presumptively not too high. (The prosecutor has not taken a cross-appeal to argue that 36 months is unreasonably low. See *Gall v. United States*, 128 S. Ct. 586 (2007).) Although in

principle extraordinary circumstances could make even a below-range sentence excessive, generic arguments for lenity, of the sort normally wheeled out before a district judge, are wasted on an appellate court. We have made this point even for above-range sentences, given the scope of the district judge's discretion after *Booker*. See *United States v. Bullion*, 466 F.3d 574 (7th Cir. 2006). A feeble contention that a below-range sentence is too high diminishes the force of the brief's remaining arguments.

Although Wallace contends that the district court overstated the loss to the Medicaid program, he does not offer a competing estimate or argue that the error (if one occurred) affected the sentence. Any loss exceeding $120,000 would produce a final sentencing range that contains or exceeds 36 months. At all events, the district judge was conservative; the real loss probably exceeded $500,000. Wallace's total billings were approximately $1.4 million, and the district court gave him credit for having a passenger in the taxi for almost 2/3 of all billed miles. The district judge did not make a clearly erroneous finding when setting the loss at approximately $500,000.

AFFIRMED