In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2510

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELGIN CURB, also known as SHIESTY,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cr-00324-31—**Samuel Der-Yeghiayan,** *Judge.*

————————

ARGUED SEPTEMBER 21, 2010—DECIDED NOVEMBER 16, 2010

————————

Before BAUER, SYKES and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* Defendant-appellant Elgin Curb pleaded guilty and was convicted of conspiracy to possess and distribute heroin, cocaine, and crack cocaine, in violation of 21 U.S.C. § 846. The district court found that Curb was a supervisor in a criminal activity subject to the managerial enhancement and that he had willfully obstructed justice. Curb was sentenced to 270 months' imprisonment. On appeal, he challenges his sentence. We affirm.

## I. BACKGROUND

From January 2003 through May 2006, Curb participated in a large-scale drug operation in a small low-income housing area in Chicago known as "the Square." In May 2006, Chicago police officers arrested more than fifty individuals, including Curb, in connection with the drug operation. Pursuant to a written plea agreement, Curb pleaded guilty to Count One of the indictment, which charged Curb with conspiracy to possess with the intent to distribute heroin, cocaine, and crack cocaine.

Days before Curb's sentencing hearing, the government filed an objection to the Presentence Investigation Report, challenging the probation department's assessment of Curb's role in the conspiracy. The government asserted that Curb qualified for the "manager or supervisor" enhancement pursuant to Section 3B1.1(b) of the United States Sentencing Guidelines.

The court held an evidentiary hearing in January 2009 on the issue of Curb's role in the criminal conspiracy. Co-defendant Lamont Harris, who pleaded guilty to the drug conspiracy, testified on behalf of the government at this hearing. Harris testified that Curb, among other acts, (1) approached him and recruited him to sell drugs for the conspiracy; (2) determined the amount of drugs Harris would sell and provided him with those drugs; (3) collected a larger share of the proceeds from Harris' drug sales; (4) occasionally directed potential customers to Harris; and (5) helped promote Harris to a greater role in the conspiracy. Harris also admitted that when he was first interviewed by government agents about his role in the drug conspiracy, he lied to the agents about

information regarding the conspiracy. As a part of Harris' plea agreement, however, he agreed to cooperate with the government and tell the whole truth at the evidentiary hearing.

Curb's sentencing hearing was scheduled for February 19, 2009, but Curb failed to appear and a bench warrant was issued for his arrest. He remained missing for two-and-a-half months until he was arrested by officers of the Chicago Police Department on April 28, 2009. Curb explained to the officers that he failed to appear at his sentencing hearing because he was "scared" of his impending sentence.

At Curb's sentencing hearing on June 3, 2009, the district court found that Curb had willfully obstructed justice under United States Sentencing Guidelines Section 3C1.1. The district court factored in the enhancements for Curb's managerial role in the conspiracy and his willful obstruction of justice and also gave him a three-point deduction for acceptance of responsibility notwithstanding his flight. The district court found that Curb's advisory guidelines range was 292 to 365 months; however, it sentenced Curb to 270 months' imprisonment.

## II. DISCUSSION

### A. Managerial Enhancement

Curb challenges the district court's application of the three-level managerial enhancement to his sentence, a determination we review for clear error. *United States v. Hankton*, 432 F.3d 779, 793 (7th Cir. 2005) (quoting *United States v. Brown*, 900 F.2d 1098, 1101 (7th Cir. 1990)). Rever-

sal is warranted "only if, after reviewing the entire evidence, [the court] is left with the definite and firm conviction that a mistake has been made." *United States v. Sheikh*, 367 F.3d 683, 687 (7th Cir. 2004) (quoting *United States v. Schuh*, 289 F.3d 968, 972 (7th Cir. 2002)).

Sentencing Guidelines Section 3B1.1(b) directs a sentencing judge to increase a defendant's offense level by three levels if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1(b) (2010). The Sentencing Guidelines do not define the terms "manager" or "supervisor," though this court has found the following seven factors to be relevant in determining an individual's role in a criminal conspiracy:

> (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning and organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.

*United States v. Howell*, 527 F.3d 646, 649 (7th Cir. 2008) (citing United States Sentencing Guidelines Manual § 3B1.1, cmt. n.4 (2010)).

After reviewing the record, we are not left with a definite or firm conviction that the district court erred in applying the managerial enhancement. The district court judge credited co-defendant Harris' witness testimony at Curb's

evidentiary hearing, as well as Curb's own testimony and plea agreement. He then applied the three-level managerial enhancement based on the existence of several of the seven factors.

As a preliminary matter, Curb bases the majority of his argument regarding this issue on attacking the credibility of Harris, who testified at Curb's evidentiary hearing. However, we note, as the district court did, that the managerial enhancement is not based solely upon Harris' testimony; Curb's own plea agreement and statements from other co-defendants likewise support the district court's finding. In any case, this court "do[es] not second-guess the judge's credibility determinations because he or she has had the best opportunity to observe the subject's facial expressions, attitudes, tone of voice, eye contact, posture and body movements." *United States v. Mancillas*, 183 F.3d 682, 701 n.22 (7th Cir. 1999) (citing *United States v. Garcia*, 66 F.3d 851, 856-57 (7th Cir. 1995)). The district court considered Harris' testimony and determined that it was not in conflict with prior statements and that any variances had been explained away.

Turning to the application of the seven managerial factors, we agree with the district court in finding that several factors apply to Curb's role in the drug enterprise. All factors need not be present for a finding that the defendant is subject to the managerial enhancement, but the defendant must have "exercised some control over others involved in the commission of the offense." *United States v. Pagan*, 196 F.3d 884, 892 (7th Cir. 2000) (citing *United States v. House*, 110 F.3d 1281, 1287 (7th Cir. 1997)).

This court has upheld a sentencing increase where less than all factors are present. *United States v. Fones*, 51 F.3d 663, 665 (7th Cir. 1995). We find that at least four of the factors are applicable to Curb's role in the conspiracy and that Curb "exercised some control over others," particularly co-defendant Harris.

First, Curb appreciably exercised "decision-making authority" and a "degree of control over others." Curb's own plea agreement and the admissions of other co-defendants indicate that Curb supplied Harris and others with packs of crack cocaine and heroin to sell around the Square. Furthermore, Curb exercised discretion in determining the amounts of crack cocaine and heroin that others would sell. Curb was also responsible for directing customers seeking drugs to the other workers around the Square. Lastly, Curb helped promote Harris to a higher level in the enterprise.

Second, Curb was involved in the recruitment of accomplices to the conspiracy. Specifically, Harris provided testimony at the evidentiary hearing that Curb recruited him. The evidence shows that while Curb and Harris were playing basketball, Curb asked Harris if he wanted to sell drugs in the Square. After Harris answered that he wanted to sell drugs, Curb immediately went over to Terrell Covens—the man in charge of selling crack cocaine in the Square—and informed Covens that Harris was interested in selling drugs, to which Covens agreed. Curb maintains that because Covens had to first approve of Harris, Curb's role in recruiting Harris was "superfluous." Despite his role as a middleman in the recruitment, the evidence

shows that it was in fact Curb who acted as the recruiter. This court has previously held that "[m]iddlemen are not, of course, immune from application of § 3B1.1." *United States v. Brown*, 944 F.2d 1377, 1381 (7th Cir. 1991).

Next, Curb had "the claimed right to a larger share of the fruits of the crime." As Harris admitted, for every pack of crack cocaine that Harris sold, he kept only $10-$30 of the $50-$150 proceeds, and Curb collected the remainder.

Finally, Curb argues that other co-defendants involved in the drug operation did not identify him as occupying a managerial position, and therefore he did not occupy that role. Curb seems to be focusing on what was *not* said instead of what the evidence does show; Curb's own plea agreement and testimony, and the testimony and plea agreements of Harris and other co-defendants, all support the finding that Curb occupied a managerial position in the drug conspiracy.

### B. Sentence Reasonableness

Curb also argues that his sentence is both procedurally and substantively unreasonable. Specifically, he contends that the district court did not consider nor articulate its reasoning regarding the mitigating factors presented by him at the evidentiary hearing. This court uses an abuse-of-discretion standard when reviewing sentencing decisions for reasonableness. *Gall v. United States*, 552 U.S. 38, 46 (2007). A sentence within the Sentencing Guidelines range is presumptively reasonable and the district court's decision will be reviewed deferentially. *United States v.*

*Hurn*, 496 F.3d 784, 790 (7th Cir. 2007) (citing *Rita v. United States*, 551 U.S. 338, 346-48 (2007)).

### 1. Procedural Reasonableness

Curb argues that the district court's sentencing was procedurally unreasonable for two reasons: (1) the district court did not consider or discuss Curb's mitigating arguments, and (2) the district court failed to articulate its reasoning in selecting Curb's sentence.

Under the post-*Booker* sentencing procedures, a district court is to "(1) calculate the applicable Guidelines range; (2) give the defendant an opportunity to identify any of the 18 U.S.C. § 3553(a) factors that might warrant a non-Guidelines sentence; and (3) state which factors influenced the final sentence." *United States v. Campos*, 541 F.3d 735, 749-50 (7th Cir. 2008) (citing *United States v. Millet*, 510 F.3d 668, 680 (7th Cir. 2007)). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The court does not need to make factual findings about each of the sentencing factors, and it is sufficient if the record shows that the court considered them. *Campos*, 541 F.3d at 750 (citing *United States v. Price*, 516 F.3d 597, 606 (7th Cir. 2008)).

In the instant case, the record indicates that the district court followed the post-*Booker* sentencing procedures. The district court calculated Curb's applicable guidelines range at 292 to 365 months' imprisonment. It then allowed Curb

to make arguments related to sentencing. Finally, the district court considered each argument that Curb made, as evidenced by fourteen pages of the sentencing hearing transcript. Specifically, the court addressed Curb's arguments regarding (1) the defendant's young age; (2) the inability of adolescents to make decisions like adults; (3) the defendant's limited criminal history; (4) low recidivism rates for first-time offenders; (5) the high costs and futile effects of incarcerating drug-trafficking offenders; (6) the need for the defendant to support his two children; (7) the defendant's troubled childhood and lack of a positive role model; (8) the defendant's education and steady employment since arrested; (9) the defendant's drug addiction treatment; (10) the unfairness and discrepancies in illegal drug offense sentencing; (11) the sentencing disparities between African Americans and Caucasians in general; (12) the sentencing disparities between the defendant and the other co-defendants; and (13) the defendant's remorse.

The district court judge then weighed the mitigating circumstances against the aggravating circumstances and noted: "While I've considered the above arguments, the defendant committed a serious crime and the defendant has acknowledged that fact." The judge went on to identify which aggravating factors he found significant, including (1) the serious nature of the defendant's crime and the rampant illegal drug trade in this country; (2) the defendant's disrespect for the law upon prior arrests; (3) the defendant's role as a supervisor in the drug enterprise; (4) the need to deter the defendant and others like him from engaging in drug offenses; and (5) the need to pro-

tect the public from offenders like the defendant. After weighing the factors and commending Curb for pleading guilty and acknowledging responsibility for his crime, the judge sentenced Curb to a below-Guidelines sentence. We conclude that the district court judge's comments at Curb's sentencing hearing clearly demonstrate that the judge considered Curb's arguments regarding the § 3553(a) factors and adequately explained his determination of Curb's sentence.

### 2. Substantive Reasonableness

Curb next argues that his sentence was substantively unreasonable for three reasons: (1) his own youth; (2) the fact that no comparable defendant was sentenced as long; and (3) the unfair disparity in crack cocaine penalties. However, "a sentence within the [Guidelines] range is presumptively reasonable, and it follows that a sentence below the range also is presumptively not too high." *United States v. Anderson*, 580 F.3d 639, 651 (7th Cir. 2009) (citing *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008)).

We do not find that the district court abused its discretion when sentencing Curb to a below-range sentence. The district court judge noted that, even though Curb was young when he started the crime, the conspiracy lasted several years. As to sentencing disparities among the various co-defendants, the judge pointed out that "each case rested on its own merits and facts and factors presented to the court." Finally, the different sentencing levels for powder and crack forms of cocaine have been the subject of intense debate, and *Kimbrough v. United States*

gave district judges substantial discretion in addressing the issue. *See Kimbrough v. United States*, 552 U.S. 85 (2007). But we have never held that a district judge was required to reject the Sentencing Guidelines applicable to crack cocaine. A district judge's reasoned agreement with an advisory sentencing guideline will not be deemed unreasonable on appeal. *See United States v. Etchin*, 614 F.3d 726, 740 (7th Cir. 2010) ("*Kimbrough* permits district courts to deviate from the crack cocaine guidelines but does not require them to do so."); *United States v. Scott*, 555 F.3d 605, 610 (7th Cir. 2009) ("If a district court may deviate from the Guidelines based on its disagreement with the Sentencing Commission's policy, it is equally within its authority to adhere to the Guidelines because it concurs with the policy judgment the Guidelines reflect."). We are satisfied with the district court's consideration and application of the § 3553(a) factors, and we will not disturb the district court's sentencing determination.

### C.  Obstruction of Justice

Curb also challenges the district court's finding that he willfully obstructed justice under Sentencing Guidelines Section 3C1.1 when he failed to appear for his sentencing hearing and eluded police until he was arrested two-and-a-half months later. "We review de novo whether the district court made adequate findings to support an enhancement for obstruction of justice, while we review the underlying factual findings for clear error." *United States v. House*, 551 F.3d 694, 697 (7th Cir. 2008).

The Sentencing Guidelines provide for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the adminis- tration of justice with respect to . . . sentencing of the instant offense of conviction . . . ." U. S. Sentencing Guide- lines Manual § 3C1.1 (2010). Application Note 4 to this Section lists several examples of conduct to which the enhancement applies, including "willfully failing to appear, as ordered, for a judicial proceeding." U.S. Sen- tencing Guidelines Manual § 3C1.1, cmt. n.4(e) (2010).

Curb bases his argument on the notion that he does not meet the willfulness requirement for the enhancement. In support of this argument, Curb asserts that he had a "panicked state of mind" and not a "bad intent or evil purpose to obstruct justice." Additionally, Curb maintains that his situation does not warrant an obstruction of justice enhancement because he "did not flee the jurisdiction, change his name or obtain a fake identity, lie about who he was, commit additional offenses or engage in conduct specifically designed to obstruct justice." This court addressed this same argument in *United States v. Bolden* and explained that it is not necessary that a defendant flee the jurisdiction, change his identity, lie, or forcibly resist arrest in order to make an obstruction of justice finding. *United States v. Bolden*, 279 F.3d 498, 503 (7th Cir. 2002). We reaffirm that "a defendant's failure to appear is 'willful' . . . if the defendant knew that he was required to appear in court and 'voluntarily and intentionally' failed to do so." *Id.* at 502 (citing *United States v. Teta*, 918 F.2d 1329, 1334 (7th Cir. 1990)).

The obstruction of justice enhancement is appropriate when a defendant's actions have had a "delaying effect on the administration of justice." *Id.* at 502-03 (quoting *United States v. Gilleylen*, 81 F.3d 70, 72 (7th Cir. 1996)). Curb does not deny that he knew about his sentencing hearing. The district court was able to obtain custody of Curb and sentence him only because he was arrested by the Chicago Police two-and-a-half months after the original sentencing hearing. Curb's intentional failure to attend his original sentencing hearing delayed the final sentencing by two-and-a-half months.

Next, we agree with the district court that Curb is misapplying this court's ruling in *United States v. Draves* to his own situation. In *Draves*, we held that it was not error to deny the obstruction of justice enhancement as applied to a defendant's "panicked, instinctive flight" from the immediate scene of his arrest. *United States v. Draves*, 103 F.3d 1328, 1337 (7th Cir. 1997). But Curb's situation is not a case of "panicked, instinctive flight," as was found in *Draves*. In that case, the defendant had been handcuffed and placed in the back seat of the officer's car while officers attended to a co-defendant. In a panicked state, the defendant fled the car and was caught by arresting officers minutes later. This court found that the defendant's action in that case was not a "calculated evasion" and therefore not a proper basis for an obstruction of justice enhancement. In this case, Curb was not engaging in an instinctive flight a few moments after being placed under police custody; he was well aware of the sentencing hearing. He knew that he had pleaded guilty to a serious crime and was facing a rather sizeable prison sentence. His behavior

can only be described as a "calculated evasion of the criminal justice system."

Lastly, Curb argues that his "disturbed mental state" (presumably panic and fear) negates his willful intent to obstruct justice. Curb attempts to loosely compare himself to the defendant in *United States v. Hanhardt*, to whom this court refused to apply the obstruction of justice enhancement because the defendant had not appeared in court due to a suicide attempt. *United States v. Hanhardt*, 361 F.3d 382, 388-89 (7th Cir. 2004), *vacated on other grounds*, *Altobello v. United States*, 543 U.S. 1097 (2005). We recognize that a "disturbed mental state" in very limited cases may be taken into account, but Curb's case is not one of those. Curb's choice not to attend his sentencing hearing and to evade the justice system for two-and-a-half months before being caught, whether caused by panic, fear, or any other emotion, is clearly obstructive conduct deserving of an enhancement.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court.