NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 19, 2011
Decided May 19, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-2865

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:09-cr-32-001 |
| NATHANIEL JORDAN, *Defendant-Appellant.* | Philip P. Simon, *Chief Judge.* |

**O R D E R**

Nathaniel Jordan was convicted after a jury trial of attempting to possess heroin with intent to distribute. 21 U.S.C. §§ 846, 841(a)(1). He was sentenced to 120 months' imprisonment. He appeals, but his appointed lawyer is unable to identify a nonfrivolous argument to brief on his behalf and thus moves to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Jordan has responded to counsel's motion with a list of issues he wants pursued. *See* CIR. R. 51(b). Confining our review to the potential issues discussed in counsel's facially adequate brief and Jordan's objection, *see United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996), we grant counsel's motion to withdraw and dismiss Jordan's appeal.

Jordan's travails began when a package addressed to him at his home in Gary, Indiana, was inspected by David Mehne, a Customs and Border Protection officer stationed at a UPS hub at Louisville International Airport in Kentucky. At first glance, Mehne testified, the package, which had just arrived on a flight from Canada, appeared to contain only clothing and two stuffed snowmen toys. But the snowmen were suspiciously heavy and lumpy, Mehne continued, so he cut one open and found 12 brown, plastic-wrapped pellets that tested positive for heroin. A forensic chemist confirmed that the substance was heroin and that the two snowmen contained almost 300 grams of the drug.

Agents in Louisville notified their counterparts at Chicago O'Hare International Airport, where the package was headed next. In Chicago the package was prepared for a "controlled delivery" to Jordan. Lee Starks, an agent with Immigration and Customs Enforcement, concealed in each snowman a transmitter that would emit a radio signal if the toy was ripped open. Starks also replaced with flour all but a "very slight amount" of the heroin to minimize the amount of the drug that could reach the streets if the government lost control of the package. Starks then sealed the snowmen with wire and glue and retaped the package so that no one could tell it had been opened.

Another agent, Krystal Intoe, borrowed a UPS truck and set out for Gary. Posing as a UPS employee, she knocked on the door of Jordan's home and announced that she had a package for him. Jordan came to the door with Scott Adkins, his codefendant. Adkins took the package, Jordan signed for it, and Intoe returned to the UPS truck. Moments later, a radio signal alerted Intoe that a snowman had been opened. She and other agents then entered the house and executed a search warrant obtained before the delivery.

One of those agents was Robert Nicodemus. He and Agent Intoe interviewed Jordan, who received *Miranda* warnings and agreed to speak without a lawyer present. At trial Nicodemus testified that Jordan acknowledged waiting on a package from Larry, his son-in-law's brother who lived in Canada. Jordan previously had bought heroin for resale from his son-in-law, who introduced him to Larry by telephone about a month before the controlled delivery. Jordan said he agreed to accept a package from Larry and sell the contents in exchange for a share of the profit. Jordan initially told the agents he expected Larry's package to contain laptop computers, but eventually he confessed to knowing that heroin would be inside.

Meanwhile, Agent Terrance McCabe and another agent interviewed Adkins, who acknowledged opening the package. Adkins, who was tried jointly with Jordan, heard the agents entering the house after he had ripped open one of the snowmen, so he stashed the toy in the closet.

Two other government witnesses corroborated Jordan's confession that he knew about the heroin. Jordan's daughter Dinabrielle reported that, just after the package had been delivered, she went to her father's room and saw Adkins open the box with a kitchen knife. "We got some goodies," Dinabrielle overheard Adkins exclaim, as Jordan looked on. And when Adkins heard the police burst in, Dinabrielle continued, she saw him hide one of the snowmen in the closet. The second witness, Mitchell Stroud, had shared a cell with Jordan while he was awaiting trial. Stroud testified that Jordan had discussed his case and said he was expecting his son-in-law to ship heroin from Canada and thought that's what was in the package. Finally, an agent from the Drug Enforcement Administration opined, based on his experience, that 300 grams of heroin is a quantity consistent with distribution. A user was unlikely to have more than a gram on hand at any time, the agent explained.

Jordan took the stand and denied telling the agents he was expecting heroin. In fact, he insisted, he thought that his son-in-law was sending him two laptops and an iPod to sell. Jordan also called a fellow prisoner to testify that Stroud was known throughout the facility as a "shady" and conniving character.

At sentencing the district court calculated a total offense level of 28 and criminal-history category of V, which yielded an imprisonment range of 130 to 162 months. But the court agreed with both parties that, because Jordan was 67 years old and suffering from end-stage kidney disease, a below-guidelines sentence of 120 months was appropriate. That was the statutory minimum given the amount of heroin and Jordan's prior conviction for a felony drug offense. 21 U.S.C. § 841(b)(1)(B)(i).

Jordan's lawyer has identified two possible issues to raise on appeal, but we agree with his assessment that either would be frivolous. Any suggestion that the government did not present sufficient evidence to convict Jordan would be farfetched. He accepted Larry's package and confessed to knowing that it contained heroin for him to sell; that was enough for a rational jury to find him guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Dennis*, 115 F.3d 524, 534-35 (7th Cir. 1997). As for Jordan's prison sentence, we would be hard-pressed to label as unreasonably harsh a term below the guidelines range, *see Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Curb*, 626 F.3d 921, 927 (7th Cir. 2010), but in this instance greater leniency was foreclosed by statute.

Jordan has drawn our attention to a number of points he wanted his lawyer to pursue, but we conclude that it would be frivolous to press any of them. Jordan, who observes that his indictment omits reference to § 846, insists that he was charged with a substantive violation of § 841(a)(1) but convicted of an attempt. Yet the indictment charges

that he "did knowingly and intentionally attempt to possess" heroin with the intent to distribute, and the jury was instructed accordingly. The missing reference to § 846, which criminalizes attempts to violate the Controlled Substances Act, did not matter because the record shows unequivocally that Jordan knew he was defending against a charge of attempt rather than a charge of actual possession. *See* FED. R. CRIM. P. 7(c)(2); *United States v. Buchanan*, 574 F.3d 554, 565-66 (8th Cir. 2009); *United States v. Brumley*, 217 F.3d 905, 913 (7th Cir. 2000). Likewise it does not matter that the judgment mistakenly states that Jordan was convicted of possession rather than attempt; the inaccuracy is a clerical error that the district court may fix at any time. FED. R. CRIM. P. 36; *United States v. Crowder*, 588 F.3d 929, 938 (7th Cir. 2009).

Nor would we conclude that the Fourth Amendment required Inspector Mehne to obtain a warrant to search Jordan's package at the Louisville airport. A search at an international border need not be supported by a warrant or even by any particularized suspicion, *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004); *Rahman v. Chertoff*, 530 F.3d 622, 624 (7th Cir. 2008), and in this case the UPS hub in Louisville was the functional equivalent of an international border because it was where the Canadian package first touched American soil, *see United States v. Abbouchi*, 502 F.3d 850, 854-56 (9th Cir. 2007). Jordan would fare no better pursuing his concern about the government's pretrial destruction of the heroin. He apparently believes that *none* of the heroin was retained, but in fact only the *undelivered* portion was destroyed. In any event, at trial Jordan did not challenge the testimony of numerous agents who said the heroin had been destroyed inadvertently, *see Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *United States v. Fletcher*, 634 F.3d 395, 407 (7th Cir. 2011), nor does he suggest now that a factual basis existed from which to infer intentional misconduct, *see Jones v. McCaughtry*, 965 F.2d 473, 477 (7th Cir. 1992). And even if he could establish that the government maliciously destroyed the drugs, it would be impossible to show prejudice because actual contraband is not necessary either to support a conviction for attempted possession or to trigger a statutory minimum sentence. *United States v. Macias-Valencia*, 510 F.3d 1012, 1016 (9th Cir. 2007); *United States v. Kottmyer*, 961 F.2d 569, 574 (6th Cir. 1992).

Jordan also hints that his Sixth Amendment right to confrontation was violated by the admission of Agent McCabe's testimony that Adkins had confessed to "working with" Jordan to sell the heroin. *See Bruton v. United States*, 391 U.S. 123, 126 (1968). In fact the agent let this slip while being prodded by Adkins' lawyer on cross-examination, and the district court immediately quieted the agent and told the lawyer to move on to something else. We would find that this minor gaffe was harmless because, in light of the substantial evidence the government presented against Jordan, his conviction "cannot plausibly be traced" to Agent McCabe's stray remark. *See United States v. Hoover*, 246 F.3d 1054, 1059-60 (7th Cir.

2001). Finally, we would reject Jordan's assertion that the government committed prosecutorial misconduct during closing argument. The "improper" statements that Jordan has identified are permissible references to Agent Nicodemus's testimony about Jordan's confession.

We note in closing that Jordan has lodged numerous complaints about his trial lawyer, who also represents him on appeal. As Jordan concedes, however, an ineffective-assistance claim is best raised on collateral review, where a complete record can be developed. *Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Isom*, 635 F.3d 904, 909 (7th Cir. 2011). Indeed it would be inappropriate for Jordan's lawyer to challenge his own performance. *See United States v. Rezin*, 322 F.3d 443, 445 (7th Cir. 2003).

We GRANT counsel's motion to withdraw and DISMISS the appeal.