# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-3028

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERICK MARTINEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 621-5—**Amy J. St. Eve**, *Judge.*

ARGUED FEBRUARY 23, 2011—DECIDED JUNE 16, 2011

Before KANNE, WOOD, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. Erick Martinez was affiliated with the Latin Kings street gang throughout an extended period of his youth. During his time with the gang, Martinez sold crack cocaine in the Humboldt Park area of Chicago, activity that led to an arrest for crack distribution and drug conspiracy. In 2003, Martinez pled guilty to the conspiracy charge pursuant to a plea agreement. Rather than present himself for sentencing as planned,

however, Martinez fled. Police caught up with him in 2008, and he again pled guilty—this time to the drug conspiracy and crack distribution charges. He was ultimately sentenced to 240 months' incarceration. Martinez now challenges his sentence, claiming that the obstruction of justice adjustment he received was improper and that his term of incarceration is "just too much." Because the obstruction adjustment was appropriate and the district court's sentence was reasonable, we affirm Martinez's sentence.

## I. BACKGROUND

In 1998, Martinez joined the West Town Chapter of the Latin Kings street gang, an affiliation that would last until at least 2001. As part of his membership with the Chapter, Martinez became associated with an interesting cast of characters. Among this cast of malcontents were Leonard Clark, who was the leader (or "Inca") of the Chapter, and Juan Cruz, who was Clark's chief lieutenant (or "Cacicque"). Also present were a number of disreputables who seemingly occupied the low- to mid-level ranks of the Chapter.[1]

---

[1] These members (and ultimately co-conspirators) included Ottis Little, Angel Serrano, David Saez, Jonathan Enriquez, and Jose Olaquez. Possibly inspired by the cast of villains from *Dick Tracy*, these members were known to friend and foe by their nicknames, specifically "Candyman," "Rabbit," "Bones," "Babyfat," and "Green Eyes."

Like any other enterprise, the Chapter needed funds to maintain itself, and it often utilized rank members like Martinez to make money via the crack cocaine trade. To facilitate crack distribution, the Chapter held meetings, where the payment of dues, the sale of drugs, and the gang's security operations were coordinated. Throughout his time with the Chapter, Martinez attended gang meetings, paid his dues (literally), and sold crack throughout the gang's area of dominance. On at least two occasions, Martinez returned some of the proceeds from his crack sales back to the Chapter. The various monies handed over to the Chapter by its members helped to fund something of a social program, subsidizing gun purchases, bonds for jailed gang members, gang security, presumably escalating funeral costs, and the like.

Unfortunately for Martinez, one of his many drug sales was to a cooperating witness of the FBI. In June 2003, Martinez and other Chapter members (the "Inca" and the "Cacicque," along with "Candyman," "Babyfat," and others with similarly creative street names) were arrested and charged with distribution of crack cocaine and drug conspiracy. By November 2003, Martinez could tell which way the wind was blowing and decided to cut his losses. To that end, he pled guilty to the conspiracy count of the indictment pursuant to a written plea agreement, promising to cooperate with the government in the process. Some other members of the Chapter that were charged in the indictment followed suit.

While Martinez initially cooperated with the government, his participation soon became fraught with problems. In early 2004, Martinez's attendance at trial preparation began to wane. By May 2004, Martinez was absent from the scene, having failed to show up for his sentencing hearing. After four years on the lam, Martinez was re-arrested in July 2008. In March 2010, he pled guilty to drug distribution and conspiracy, this time without a plea agreement.

Martinez's sentencing hearing occurred on August 19, 2010. At the hearing, Martinez agreed that his base offense level was properly calculated at 36, and that a two-level upward adjustment for gun possession was appropriate. In two steps that essentially cancelled each other out, the district court applied both a two-level upward adjustment to Martinez's offense level for obstruction of justice (over Martinez's objection) and a two-level downward adjustment for acceptance of responsibility (over the government's objection). Based on two 2002 driving-while-suspended convictions, the district court went on to conclude that Martinez should be placed in criminal history category II; that category—coupled with his offense level of 38—yielded an advisory range of 262 to 327 months' incarceration. After hearing both sides' arguments regarding the § 3553(a) factors, the district court departed downward from the advisory guidelines range and sentenced Martinez to a term of 240 months' incarceration.

Martinez timely appealed his sentence.

## II. DISCUSSION

Properly distilled, Martinez's challenge rests on two grounds. He claims that the district court erroneously applied an obstruction of justice adjustment to his offense level and that his sentence was generally unreasonable. We will review each claim in turn.

### A. *Obstruction of Justice Adjustment*

Martinez begins by contesting the sentencing adjustment he received for obstruction of justice. The government argued for the adjustment at Martinez's recent sentencing hearing because he failed to present himself for his initial sentencing hearing, instead absconding for several years. Martinez responded that his flight was motivated by fear of his former gang associates, who he claimed had made threats to retaliate against him in prison, and not by any abstract desire to frustrate justice. As such, Martinez argued that he did not "willfully" obstruct justice, as required for application of the adjustment. The district court agreed that Martinez was motivated by fear, but found that he still acted willfully within the meaning of the adjustment because he voluntarily and intentionally failed to appear at his sentencing. On appeal, Martinez challenges the district court's interpretation of the willfulness requirement, an issue that we review *de novo. United States v. Taylor*, 272 F.3d 980, 982 (7th Cir. 2001).

Section 3C1.1 of the Sentencing Guidelines provides for a two-level upward adjustment if a defendant

"willfully obstruct[s] or impede[s] . . . the administration of justice with respect to . . . sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The section's application notes go on to list numerous types of conduct that qualify as obstructive and to which the adjustment is intended to apply. U.S.S.G. § 3C1.1 cmt. n. 3 & 4. Specifically, the notes make clear that "willfully failing to appear, as ordered, for a judicial proceeding" is "conduct to which [the obstruction] adjustment applies." U.S.S.G. § 3C1.1 cmt. n. 4(e).

For better or worse, *see United States v. Gage*, 183 F.3d 711, 717-19 (7th Cir. 1999) (Posner, C.J., concurring), we have interpreted § 3C1.1's use of the word "willfully" to require a specific intent to obstruct justice. *United States v. Nurek*, 578 F.3d 618, 623 (7th Cir. 2009); *United States v. McGiffen*, 267 F.3d 581, 591 (7th Cir. 2001). In light of the language used in the application notes, however, we have also held that engaging in the conduct listed in the notes (with that conduct's requisite intent) is often sufficient—on its own—to permit imposition of the adjustment. *See, e.g., United States v. Freitag*, 230 F.3d 1019, 1026 (7th Cir. 2000) ("[A]ll that is required to impose the obstruction of justice enhancement on perjury grounds is that the court make a finding that encompasses the factual predicates for a finding of perjury." (*citing United States v. Dunnigan*, 507 U.S. 87, 95 (1993)); *United States v. Cotts*, 14 F.3d 300, 307-08 (7th Cir. 1994) (adjustment properly applied so long as the defendant intentionally engaged in the conduct listed in note 4(I) of § 3C1.1). For failure to appear cases, we have concluded that the adjustment is triggered if the defendant knew that he had to appear in court and volun-

tarily and intentionally failed to do so. *See, e.g., United States v. Curb*, 626 F.3d 921, 928-29 (7th Cir. 2010); *United States v. Bolden*, 279 F.3d 498, 502 (7th Cir. 2002).

Martinez seizes on these requirements, arguing that his failure to appear was neither intentional nor voluntary. He first claims that—because he based his decision to abscond on fear—he could not have behaved intentionally and the adjustment could not be applied. This argument misapprehends the intent necessary to trigger the adjustment and flies in the face of our controlling precedent. As we held in *Curb*, a defendant's personal motivations for not showing up for sentencing are generally irrelevant to the intent question; rather, it is enough for intent's sake that the defendant made a conscious decision—regardless of the reason—not to appear, thereby deterring the administration of justice.[2] *See Curb*, 626 F.3d at 929 (defendant's decision not to appear was intentional conduct deserving of the adjustment even if motivated by "fear" or "any other emotion"). Martinez neither disputes *Curb*'s reasoning nor

---

[2] A number of our sister circuits have held similarly. *See, e.g., United States v. Hudson*, 272 F.3d 260, 263-64 (4th Cir. 2001) (holding that the sentencing court "erred in failing to enhance [the defendant's] offense level" even if the defendant fled from sentencing because he was "scared"); *United States v. Aponte*, 31 F.3d 86, 88 (2d Cir. 1994) ("It is sufficient . . . that the defendant intended to fail to appear at a judicial proceeding, regardless of his reason for desiring to flee."); *United States v. Taylor*, 997 F.2d 1551, 1560 (D.C. Cir. 1993) (observing that the defendant met the *mens rea* requirement of the adjustment even if he "fled out of fear").

draws a meaningful distinction between the facts here and the facts in *Curb*. As such, because Martinez was aware of his sentencing and deliberately decided not to attend, *Curb* dictates our holding that he possessed the intent necessary to apply the adjustment.

Martinez goes on to argue that the threats made him against him rose to the level of duress, thus rendering his flight involuntary. We need not decide in this case whether the defense of duress applies to an obstruction of justice adjustment, however, as Martinez has not made out the elements of duress. For duress to apply, a defendant must establish that he "reasonably feared immediate death or serious bodily harm unless [he] committed the offense" and that "there was no reasonable opportunity to refuse to commit the offense and avoid the threatened injury." *See United States v. Sawyer*, 558 F.3d 705, 711 (7th Cir. 2009). Martinez did not flesh out either requirement below, and he does not present a developed analysis of those requirements in his brief on appeal. Moreover, even if he had, we are hard pressed to imagine an argument that could have been successful on the facts of this case. Martinez fled for several years, and the notion that he lacked a reasonable opportunity to cease his obstructionist behavior and work to secure safer incarceration conditions is a tough pill to swallow. We thus reject his voluntariness challenge to the obstruction of justice adjustment.[3]

---

[3] At oral argument, Martinez also maintained that his borderline intellectual functioning and poor decision-making abil-

(continued...)

*B.  The Reasonableness of Martinez's Sentence*

Martinez's remaining arguments concern the overall reasonableness of his 240-month, below-guidelines sentence. Our review of the reasonableness of a sentence proceeds in two steps. *United States v. Brown*, 610 F.3d 395, 397 (7th Cir. 2010). First, we must ensure that the district court committed no significant procedural errors, such as treating the guidelines as mandatory, failing to calculate the guidelines range, or failing to provide a meaningful assessment of the 18 U.S.C. § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 51 (2007). Second, so long as the procedures employed were sound, we assess the substantive reasonableness of the sentence in light of the statutory factors laid out in § 3553(a). *Id.* We review the substantive reasonableness of a sentence imposed for an abuse of discretion, mindful that a below-guidelines sentence enjoys a presumption of reasonableness on appeal when it is challenged by a defendant for being too long. *United States v. Shamah*, 624 F.3d 449, 460 (7th Cir. 2010); *United States v. Jackson*, 598 F.3d 340, 345 (7th Cir. 2010).

Martinez first complains, somewhat obliquely, that the district court committed procedural error when it "paid

---

[3] (...continued)
ities vitiated his willfulness, meaning that the obstruction adjustment could not be applied. This argument was not raised in his opening brief, and it is therefore waived. *United States v. Haynes*, 582 F.3d 686, 704 (7th Cir. 2009); *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007).

mere lip service to the § 3553(a) factors" and failed to "articulate any reason why Martinez's factors in mitigation were ignored." The record belies this claim. The sentencing transcript shows that the district court provided explicit, reasoned explanations for accepting or rejecting nearly all of Martinez's arguments and imposed a sentence meaningfully linked to the § 3553(a) factors, and that is generally enough. *See United States v. Ashqar*, 582 F.3d 819, 826-27 (7th Cir. 2009); *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008).

To be sure, the district court must address "all of a defendant's principal arguments that 'are not so weak as to not merit discussion.'" *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009) (*quoting United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)). The key word, however, is principal—non-principal arguments can be considered and rejected by the district court without explicit discussion. *See*, *e.g.*, *United States v. Moreno-Padilla*, 602 F.3d 802, 811 (7th Cir. 2010) (noting that there is "no requirement that a district court extensively address non-principal arguments"); *Ashqar*, 582 F.3d at 826 (district court need not "state why it rejects every argument offered by the defendant"); *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008) (non-substantial arguments can be considered without comment). The only arguments Martinez identified in his brief that were not explicitly addressed by the district court related to his "school difficult[ies]" and "academic progress." Those two arguments, however, were not Martinez's principal arguments for mitigation; they were mentioned in a scattershot fashion alongside

a number of arguments related to his background at sentencing, and they received a very cursory treatment in his brief on appeal. As such, the district court did not err in rejecting those arguments without discussion.

Left without a procedural leg to stand on, Martinez goes on to attack the general reasonableness of his below-guidelines sentence. He first argues that his calculated criminal history category (of two) overstated the seriousness of his prior bad acts and that—pursuant to the policy of U.S.S.G. § 4A1.3—a lower sentence was appropriate. The district court considered this argument, recognizing that it could reduce Martinez's sentence if his prior convictions were minor and his general criminal history showed a low risk of recidivism. The district court, however, saw Martinez's criminal history in a different light than he did. The court concluded that Martinez's two convictions for driving with a suspended license were not "minor" crimes warranting a departure, as the concurrent sentences imposed suggested some severity. The court also determined that Martinez's criminal history did not demonstrate a lack of recidivist tendencies, given that he was arrested on his prior charges while being investigated for other crimes. Despite Martinez's claims to the contrary, the district court's conclusions regarding his criminal history were within its discretion, and we accordingly find no merit to this argument. *See United States v. Nicksion*, 628 F.3d 368, 378 (7th Cir. 2010); *United States v. Turner*, 569 F.3d 637, 643 (7th Cir. 2009).

Martinez next argues that his sentence is unreasonable in light of § 3553(a)(6), which requires sentencing courts

to avoid unwarranted sentence disparities among defendants with similar records. This argument is meritless. Martinez uses the same comparators for a lower sentence before us that he used before the district court: the relatively low sentences of some of his gang associates (specifically "Babyfat" and "Green Eyes"). As the district court noted, those defendants' circumstances were not similar to his, as their sentences were based in part on their cooperation with the government. Martinez did not cooperate with the government; he fled from it. As such, the district court was within its discretion to conclude that there was no unwarranted disparity between Martinez's sentence and the sentences he identified, and thus no basis for a downward variance under § 3553(a)(6). *See United States v. Favara*, 615 F.3d 824, 830-31 (7th Cir. 2010); *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009).

Martinez finally claims that his sentence is excessive in light of the disparity between sentences for defendants who distribute crack cocaine and those who distribute powder cocaine. The district court acknowledged this claim and sentenced him below the advisory guidelines range based upon it, so his argument on appeal boils down to an assertion that the district court's downward variance was just not enough. This argument blithely ignores two crucial concepts, namely that our review of the reasonableness of a sentence is deferential and that the district court's discretion to craft a sentence in keeping with the § 3553(a) factors is considerable. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Especially in light of the presumption of reasonableness

afforded a below-guidelines sentence on appeal, merely claiming that a reduction is "just not enough" is—put succinctly—just not enough. *See United States v. Whited*, 539 F.3d 693, 699 (7th Cir. 2008); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008). Under an abuse of discretion review, Martinez's sentence was reasonable.

### III. CONCLUSION

For the aforementioned reasons, we AFFIRM Martinez's sentence.