NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2012
Decided August 15, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-1317

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:11-CR-30076-001-DRH |
| CHRISTOPHER H. MCCOY, *Defendant-Appellant.* | David R. Herndon, *Chief Judge.* |

**O R D E R**

Christopher McCoy, who is 49, pleaded guilty to using the Internet to entice a minor to engage in illicit sexual activity, 18 U.S.C. § 2422(b); transferring obscene matter to a minor, *id.* § 1470; and receiving, *id.* § 2252(a)(2), possessing, *id.* § 2252(a)(4)(B), and distributing child pornography, *id.* § 2252(a)(2). The district court sentenced him to a total of 327 months' imprisonment, the top of the guidelines range. On appeal McCoy argues that the Chapter 2 guidelines for child-pornography crimes are not supported by empirical data and that the district court relied on unsupported conjecture to reach his sentence. Because the district court's sentence is reasonable and supported by the record, we affirm the judgment.

As part of an ongoing investigation into child pornography, an undercover officer represented himself as a 14-year-old boy and engaged in sexually explicit Internet chats with McCoy. McCoy believed the officer was 14 and electronically sent a close-up photo of

his penis and nine videos of minors engaged in sexually explicit behavior. He also sent by regular mail a cell phone and a camera and instructed the undercover officer to take nude pictures of himself and send them to McCoy. McCoy talked to him about masturbation and using objects to stretch out his anus to prepare for anal sex. McCoy told the officer that he "had boys as young as nine and made them cum," and that he wanted to teach him lots about sex, "things true dads teach their sons." He also encouraged the undercover officer to have sex with the 12-year-old brother the officer had mentioned in their chats.

Local police contacted McCoy, who consented to a search of his home and to the seizure of his laptop computer, DVDs and CDs, and a thumb drive. Officers also found girls underwear in his home. McCoy admitted to conversing with the undercover officer and to trading images of child pornography with others using Limewire. Investigators eventually uncovered 358 videos (equivalent to 26,850 still images) and 5,570 still images of child pornography.

As a result of the investigation, the authorities learned that McCoy had taken part in sexually explicit conversations with children over the Internet. Through Facebook, he had sent unsolicited messages to over a dozen individuals between October 2010 and January 2011, including at least six people who responded and represented themselves as girls ages 8 to 15. (There is no evidence in the record that these were other undercover officers or adults posing as children.) McCoy consistently told people that he was having sex with his daughters, ages 11 and 14. He told a 15-year-old girl, who said that she has sex with her own father and lost her virginity to her older brother, that he believes incest is a right and that parents should encourage a child's sexuality from a very young age; he told a 14-year-old girl that he wished incest was more accepted in the United States like it is in other places. McCoy had particularly disturbing conversations with a 14-year-old who said that she was scared to text McCoy and wanted to feel safe; he responded that he would like to meet her in the future.

To one of the 10-year-olds, McCoy described his sexual interest in an infant: "Got my sights set on a hot little newborn, M. She is sweet. I changed her the other day and was shaking. Laugh out loud. Her mom brought her over and she doesn't know I'm a pedo." He asked a 14-year-old, in his initial messages to her, what size bra she wore and whether she was "shaved down there." To a woman whose Facebook profile picture depicted her and an infant, he wrote: "I know you both need my cock . . . . Share your little girl with me. I know her cunt is sweet. I know she would nurse on my cock." He asked a girl he believed to be age 15 whether she had thought about letting her brother "knock her up." He told another 14-year-old that he always had "wanted to grab a girl off a playground and take her somewhere and just use her and then just throw her away." About his sexual fantasies involving babies, McCoy said to a 13-year-old girl:

> If I had a supply of little ones I would use them up. I know for a fact I would
> rape them over and over 'til they died on my cock with me cumming in them

as their death spasms rock their bodies. Just use them and throw them away like a tissue after jerking off.

I like to feel them tear, yes. I was choking her but I didn't have to kill the little brat (laugh out loud). I should have. My cock was covered in her blood from her torn pussy and her ripped asshole.

McCoy pleaded guilty to all five counts in the indictment. A probation officer calculated McCoy's guidelines range by grouping the counts of transfer of obscene matter to a minor and receipt, possession, and distribution of child pornography. *See* U.S.S.G. §§ 3D1.2, 3D1.3. The probation officer started with a base offense level of 22, *id.* § 2G2.2(a)(2), and added 2 levels because the material involved a minor under the age of 12, *id.* § 2G2.2(b)(2), 5 levels because McCoy had distributed the material to a minor, *id.* § 2G2.2(b)(3)(C), 4 levels for sadistic or masochistic content, *id.* § 2G2.2(b)(4), 2 levels for use of a computer, *id.* § 2G2.2(b)(6), and 5 levels for more than 600 images, *id.* § 2G2.2(b)(7)(D), to reach an adjusted offense level of 40. Two more levels were then added to account for the 2 groups of offenses, *id.* § 3D1.4, and 3 subtracted for McCoy's acceptance of responsibility, *id.* § 3E1.1, to reach a total offense level of 39. McCoy had no criminal record, putting his criminal history at Category I and yielding an imprisonment range of 262 to 327 months. The statutory minimum penalty is ten years for enticement, 18 U.S.C. § 2422(b), five years for distributing the images, *id.* § 2252(b)(2), and five years for receiving the images, *id.* § 2252(b)(2).

At sentencing, the district court adopted the findings of the probation officer, and neither side objected to the calculations. The government argued for a sentence of 327 months, citing extensively to 78 pages of transcripts that were generated from McCoy's interactions on the Internet and through text messages. The government also pointed out that the number of images McCoy possessed was 54 times greater than the maximum contemplated by the guidelines and emphasized that approximately one-third of the images were of infants and toddlers. The government referenced the more-heinous examples, including a video of an adult having sex with a toddler and an image of an adult male penis inside the mouth of an infant with a bib. McCoy's attorney asked for a sentence of 20 years, calling McCoy's online conversations horrific fantasies that did not reflect McCoy's actual behavior. For example, McCoy had said that he had sex with his daughters, but he does not have any daughters. The government also had no evidence that McCoy ever had touched a child.

The district court explained that McCoy's counsel had made "as good an argument as one could make defending these seemingly indefensible acts," which the judge called horrendous and egregious. But ultimately the court rejected McCoy's request for a sentence below the guidelines range:

Part of the problem that I have with [defense counsel]'s argument is, as brilliant as it is, is because much of what's in those various communications is, while not exact, very similar to the communication that we do have a great deal of certainty about, and that's the communication he had with the undercover officer, and he thought that was a 14-year-old. We know no other undercover officer came forward from any of the other conversations so it would certainly seem and be logical that the other conversations were with real children, and even though they constitute some fantasy or other in some fashion or another and may not represent—and even if they don't represent reality, one is left to ponder the theory that [AUSA] is pursuing, the danger to society. One is left to ponder, what will happen in the future with these children who -- recipients of these conversations, participants in these conversations when, whatever age they are, whether they're five or six or ten or 12 or 13, and they're contemplating what they're doing in their lives and they recall a conversation they had over the internet with a guy who talks about going to a park and stealing away children or ripping children apart with his penis, killing children and watching them die, and they're at formative ages and they're thinking about, what do I do with my life? You know, there was this guy who he talked about doing this. Seemed perfectly normal to him, that guy from Granite City. That's where he told me he was from.

So you see, even though Mr. McCoy doesn't travel to Texas to have sex with that child, he's putting into the mind of that child ideas about what makes sense in the world. It makes sense to an adult to put his penis in a child and rip the child apart. It makes sense to go to a playground and drag a child away from a playground. It makes sense to have sex with a child until the child dies. It makes sense to do this and to do that and do all the other things that, as Mr. Schultz said, make us want to vomit when we read them or hear them read. So that's where the danger to the community and to all these places where these children live come into play, not from the fact that perhaps we're as worried about Mr. McCoy physically carrying out these deeds, but how many of the recipients of his words are going to carry them out for him? That's what's got me concerned. Mr. McCoy may not carry them out, but his disciples may carry them out.

That's what's got me concerned, all these kids that are out there listening to this, because their minds are still being formed, their thoughts about life are still being formed, they're still trying to figure out what's right and wrong in this world, and he's inundating them with all these wild ideas about what makes sense in the world. What are they to think? They listen to him talk about it, they listen to another guy talk about it, they listen to

another guy talk about it, and pretty soon they all think it makes sense. Talk
about danger.

The court imposed an overall sentence of 327 months and a lifetime term of supervised
release.

On appeal, McCoy argues that his prison sentence is unreasonable. He contends that
we should not presume that his sentence is reasonable because, he says, U.S.S.G. § 2G2.1
was not derived from empirical evidence and national experience. He also contends that the
district court unreasonably weighed the sentencing factors. According to McCoy, the court
should not have relied upon the number of images or speculated about the impact of his
conversations with minors when determining the sentence.

A correctly calculated, within-guidelines sentence is entitled to a rebuttable appellate
presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 341 (2007); *United States v.
Pennington*, 667 F.3d 953, 958 n.2 (7th Cir. 2012); *United States v. Sandoval*, 668 F.3d 865, 868
(7th Cir. 2011). McCoy does not dispute that the guidelines were properly calculated.
Rather, he argues that U.S.S.G. § 2G2.1 does not produce a sentence likely to achieve the
objectives of 18 U.S.C. § 3553(a). McCoy's guidelines range was based primarily upon
§ 2G2.2, not § 2G2.1, but assuming that McCoy intends to challenge generally the guidelines
for sex offenses or pornography involving children, his argument still fails. District courts
are not required to disagree with the child-pornography guidelines. *United States v. Rodgers*,
610 F.3d 975, 977 (7th Cir. 2010); *United States v. Huffstatler*, 571 F.3d 620, 623–24 (7th Cir.
2009). The district court might have to *consider* an argument like McCoy's, *see United States v.
Pape*, 601 F.3d 743, 748–49 (7th Cir. 2010), but he never raised it before the district court.
Therefore, McCoy's argument falls significantly short of rebutting the presumption of
reasonableness that we accord to a within-guidelines sentence.

After properly calculating the guidelines, the district court must consider the factors
under § 3553(a). *United States v. Baker*, 655 F.3d 677, 683 (7th Cir. 2011); *United States v.
Martinez*, 650 F.3d 667, 671 (7th Cir. 2011). The court considered the seriousness of the
offense, 18 U.S.C. § 3553(a)(2)(A), when focusing on the danger presented to children
McCoy interacted with on the Internet. And the court looked at the need to protect the
public from McCoy's further crimes, *id.* § 3553(a)(2)(A), characterizing him as an
"outrageously dangerous person." The judge had never seen a case with so many images.
The court also considered the victimization of the children in the images and videos.

McCoy argues that the court wrongfully speculated about the impact of his
statements on the minors to conclude that he is a danger to society. District courts cannot
speculate as to evidence at sentencing, but here the conjectures were within reasonable
bounds. *See United States v. Halliday*, 672 F.3d 462, 474–75 (7th Cir. 2012) (finding plain error
when district court speculated that defendant believed his actions were lawful); *United
States v. Bradley*, 628 F.3d 394, 400–01 (7th Cir. 2010) (reversing sentence as unreasonable
based on district court's speculation that defendant had probably committed a child sex
offense before and would again). But here, McCoy does not dispute the evidence—he

admits that he made these statements to children, and no one can contest the heinous nature of his comments and instructions to them. McCoy instead seems to focus on the district court's conclusion about the effect of his behavior. The district court observed, rightly, that McCoy had placed ideas into these children's minds. The court then drew a narrow inference: these children would remember their conversations with McCoy, and those memories would influence the way they see the world; the judge pondered whether those memories also would influence their behavior. In doing so the court drew a reasonable inference from the evidence. *See United States v. Salem*, 657 F.3d 560, 563 (7th Cir. 2011); *United States v. Turner*, 604 F.3d 381, 386–87 (7th Cir. 2010). Though some of the children did not chat much with McCoy (at least in the excerpts provided), two responded by telling him about their sexual experiences with parents and siblings. Two others asked him extensively about his relationship with his daughters. These responses signal at least the potential for the girls to prey on others or become victims themselves. And these responses would seem to substantiate the very concern expressed by the district court about the effects of McCoy's criminal conduct.

Finally, McCoy contends that the court should not have based his sentence on the number of images because that factor already was accounted for in his sentences for the counts actually involving the images—possession, distribution, and receipt of child pornography. The district court, however, was permitted to consider the images as part of McCoy's relevant conduct. U.S.S.G. § 1B1.3; *see United States v. Nance*, 611 F.3d 409, 416–17 (7th Cir. 2010); *United States v. Barevich*, 445 F.3d 956, 958–59 (7th Cir. 2006). McCoy maintains that he was not responsible for the victimization of the children in the videos and images that he possessed and shared, but the district court could consider these victims even though McCoy was not involved with production. *See United States v. Klug*, 670 F.3d 797, 800–01 (7th Cir. 2012); *United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006); *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001).

**AFFIRMED**.